Hackney and Caldwell *vs.* Rome *et al.*

RICHARD W. HACKNEY and WILLIAM H. CALDWELL, plaintiffs in error, *vs.* SAMUEL W. ROME *et al.*, defendants in error.

Hackney, the drawer of a lot of land, before the grant issued, sold it to Rogers, received payment for it, and executed to Rogers a bond to make titles when grant issued, etc. Rogers afterwards sold the land, receiving payment, and assigned the bond to Caldwell. Subsequently, Rogers mortgaged this lot to McCarter and Allen, who foreclosed the mortgage and caused the land to be sold. A sheriff's deed was executed to the purchaser, and that deed recorded within twelve months, and defendants went into possession under that deed. After this, Hackney executed to Caldwell a deed for the land, in execution of his bond given to Rogers and assigned by him to Caldwell. More than twelve months had elapsed from the assignment to the execution of this latter deed, and at that time defendants were in possession of the lot. On ejectment brought on several demises from Hackney and Caldwell: *Held*, that on these facts the plaintiff was entitled to recover the premises in dispute, notwithstanding the record of defendant's deed within twelve months.

Ejectment, in Whitfield Superior Court. Tried before JOHN W. H. UNDERWOOD, Esq., at October Term, 1861.

His Honor, Judge Walker, being interested in this cause, it was submitted to the decision of John W. H. Underwood, Esq., under the following agreed statement of facts:

The lot sued for was granted to Richard W. Hackney on the 26th of December, 1842. On the 9th of January, 1836, Hackney made to Martin D. Rogers a bond, the condition of which, after describing the land, proceeds, "now, if the above land is of the description above given, and if said Hackney makes, or causes to be made, good titles to the said Rogers, his heirs or assignees, whenever the said Rogers, his heirs or assignees shall grant the same and demand titles, then the above bond," etc.

This bond was endorsed, "I hereby transfer the within bond to William H. Caldwell, and request that a deed be made to him; done for value received, this November 28th, 1843.                                        M. D. ROGERS.

This transfer was made to Caldwell, on the payment of

$200 00. Rogers paid Hackney for the land at the time of making the bond, and Caldwell paid Rodgers at the date of the transfer of the bond.

Hackney made a quit-claim deed to Caldwell, dated 16th January, 1855, which was recorded 10th October, 1855. Hackney made a quit-claim solely on the ground of the length of the time between the date of the bond and transfer, he not knowing the condition of Rogers.

Rogers, on the 19th February, 1845, mortgaged said land and one other lot to McCarter & Allen for the sum of $300, which mortgage was regularly foreclosed and the land levied on by virtue of the mortgage *fi. fa.*, and sold on the 3d of August, 1847, for the sum of $12 00. A deed was made under the sale on said 3d August, 1847, and recorded on the 27th day of the same month. The land was worth at the time $90 00. Defendants hold possession under said sheriff's sale, were in possession when the action was brought, and were in possession under the sheriff's sale at the date of the deed from Hackney to Caldwell, namely, 16th January, 1845.

After argument had, the Judge presiding held, that under the state of facts agreed upon the plaintiff's were not entitled to recover, to which decision plaintiffs excepted.

McCutchen, for plaintiffs in error.

..............., *contra.*

*By the Court*—Lyon, J., delivering the opinion.

This was an action of ejectment for the recovery of lot of land Number 234, in the 11th district and 3d section of originally Cherokee county, and now Whitfield county. The lot was drawn by one Richard W. Hackney, and on the 9th January, 1836, he sold it to one Martin D. Rogers, received payment from him for it, and executed to Rogers his bond for the penal sum of $500 00, conditioned, that "if the land was of the description given therein, and that Hackney makes, or causes to be made, good titles for said lot to said Rogers, his heirs or assignees, whenever the said Rogers, his

Hackney and Caldwell *vs.* Rome *et al.*

heirs or assignees shall grant the same and demand titles, then the bond to be void, etc." The land was granted to Hackney on the 26th December, 1842, and on 28th November, 1843, Rogers transferred the bond, by written assignment, to William H. Caldwell and requested titles to be made to him for the land for value received. For this transfer and assignment, Caldwell paid Rogers $200 00 at the date of the transfer. On the 19th day of February, 1845, Rogers mortgaged this lot and another to McCarter & Allen, who subsequently foreclosed the mortgage, from which foreclosure an execution issued, and the land was levied on and sold under it on the 3d of August, 1847. A sheriff's deed was executed to the purchaser on the same day, and recorded on the 29th day of August, 1847. The defendants are in possession under that deed.

On the 16th day of January, 1855, Hackney, the drawer, in execution of his bond for titles to Rogers, made to Caldwell, the assignee thereof, a quit-claim deed for the lot, and at this time the defendants were in possession under the sheriff's deed, as before stated.

The action of ejectment was brought on this latter title, with separate demises from Hackney and Caldwell. On the trial, the parties, having agreed upon these facts, submitted the question of title to the presiding Judge, with an agreement that a verdict should follow the decision. The Court decided that the plaintiff was not entitled to recover, to which the plaintiff excepted, and that now is the question before us.

The ground relied on by the defendant for a recovery, and on which the decision was made is, that the payment of the purchase-money, bond for titles and issue of the grant, vested the title in Martin D. Rogers, the common source of the titles, both of plaintiff and defendant—the one by transfer of the bond, the other by sheriff's deed, and as the latter, under which defendants claim, though junior in date, was recorded within twelve months from its execution, it has preference over the title of the plaintiff by the Registry Act of 25th December, 1837.

We cannot assent to the soundness of this position. The

4th section of the Act of 25th December, 1837, under the operation of which, only, the defendant pretends to a title is as follows:

"In all cases where two or more *deeds* shall hereafter be executed by the same person or persons, conveying the same premises to different persons, the one recorded within twelve months from the time of execution, (if the feoffee have no notice of a prior deed unrecorded at the time of the execution of the deed to him or her,) shall have the preference; and if all be recorded, or not recorded, within said time, the eldest deed shall have the preference."

At the time that Rogers mortgaged the lot to McCarter & Allen, under a foreclosure and sale of which defendants claim, he had not a particle of title, either legal or equitable, or interest of any kind, whatever, in the land; on the contrary, the in-interest which he had possessed in the land being not a legal title, but an equitable one, a right to have a legal conveyance to him of the lot, a mere chose in action, and nothing more, he had long before parted with to Caldwell, by written assign-, ment, and for valuable consideration. Without the Registry Act, the title emanating from this mortgage is absolutely worthless, because the mortgagor, Rogers, having no interest in the land, the mortgage, foreclosure, sale and sheriff's deed could convey none. Does the Registry Act aid that title? We are clear that it does not.

A case to come within the provisions of this section of the Act, must be within the letter; for as this statute is one in derogation of the rights of property, or which takes away the estate of a citizen, it must be construed strictly. The defendants' case is not within the letter, nor is it within the reason or spirit of the Act. The statute declares that when there are two deeds from the same person to the same lot, etc., the youngest, if recorded within twelve months, and the oldest not, the younger shall have preference. In this case there is but one deed; I mean a deed in the sense of that statute, conveying land and executed according to the requirement of that Act; and that is the deed under which defendants claim. The object of the statute was to control persons

Hackney and Caldwell *vs.* Rome *et al.*

taking conveyances for land to put them upon record, so that the world might be notified where the title lay, and innocent persons protected or guarded against the purchase of land from one who, from title deeds in his possession, might appear to be the legal owner.   The plaintiff's interest in the land—that he acquired by the assignment of the bond—was not a deed nor a conveyance of the land, but was simply an assignment of an equitable interest in the land, a right to demand and have of Hackney, the drawer, in whom was the legal title, a deed conveying the land to him. It was therefore, not within the provisions of the law, was not required to be recorded, nor could be made a record of.   By the transaction, the plaintiff acquired all the interest that Rogers had, and held it in the same way.   There was nothing wrong or illegal in the contract, but it was legitimate, and such an one as equity constantly approves and enforces.   The law imposed no duty upon him in respect to the registry of his interest in the land, and consequently it cannot be forfeited or defeated by a failure to record it, or by the performance of a duty on the part of the defendants which the law required them to perform, that is, the recording of the deed under which they held.   So much for the effect of the objects of the Act considered in respect to the plaintiff.   A little consideration will show that the defendants in this case are as far from being the persons that the Act was intended to protect as the plaintiffs are from being persons that the statute intended to punish for not complying with its enactments. At the time that McCarter & Allen (and the defendants can occupy no better situation than they did,) took this mortgage. Rogers, the mortgager, not only had no title, legal or equitable, to the land, but there was no deed, title, paper or instruments of any kind in existence, showing any title or interest to the land in him.   Nor was he in possession of it so as to induce a belief in the most grossly negligent persons that he had a right to convey the land.   The only instrument in writing that Rogers, the mortgagor, ever had creating an interest in him, was the bond for titles of Hackney, and that was not in his possession, but had been assigned, and the evi-

dence of its assignment was on the bond itself. How, then, could the mortgagees be deceived into the belief, that the land belonged to Rogers? How are they, or those under them, innocent and *bona fide* purchasers, without notice of another and better title? The plaintiff is in no default under that Act, is not the person intended to be punished, nor are the defendants the persons intended to be protected by it. The case is neither within the letter nor spirit of the Act, and the defendants took nothing either by their deed or its record.

The statute was never intended to apply to cases like this. It contemplated that the deeds, one of which should take preference by being properly recorded, should emanate from one in whom the legal title resided, not from one like Rogers, who only had a mere equity. It never was intended that deeds or conveyances, starting from one through whom an equitable interest in the land had passed, should, by being recorded, cut off the legal titles as well as the equitable rights of others. It would be a strange and anomalous thing if it was true, that a title could be perfected in this way to land against the rights of a *bona fide* and legal owner without even the shadow of a thing to rest upon for its foundation. If it was true, there were two persons in this case besides the real owner from whom deeds could have issued and created a perfect title—Rogers and Hackney—and there might have been a hundred, if the bond had been transferred so often. Now if Hackney had made the deed of the defendants, or given the mortgage instead of Rogers, the case would have been very different. Counsel for defendants were confident, that if Rogers had made a deed to Caldwell, instead of an assignment of the bond, there could have been no doubt but that the title would be with them. We do not think that would have changed the question, for in addition to the reasons already given such deed could not have conveyed the land, this would only, notwithstanding its form, have conveyed the interest that Rogers had in the land, and that was not the legal title.

In this decision I do not call into question anything this Court has said in respect to a bond for titles, and payment of

the purchase creating an equity or perfect equity, if accompanied by possession, etc., but I endorse all that the Court has decided on that subject.

Let the judgment be reversed.