LATHAM *et al. v.* INMAN.

1. On the trial of a petition by the heirs at law of a decedent, consisting of his widow and children, the object of the petition being to attack and set aside certain deeds made by third persons and purporting to convey some of the land to which the heirs claim title, the record of homestead proceedings by which the widow had a homestead in the disputed property set apart to herself and minor children is not relevant evidence.

2. If deeds sought to be cancelled as a cloud upon the plaintiff's title are valid and operative muniments of title in favor of the defendant to the extent of one undivided half of the premises to which they relate, although the plaintiff may be the rightful owner, legal and equitable, of the other half, the prayer for cancellation must be denied.

3. Where the owner of several subdivisions of a larger tract in which he has an undivided half-ownership sells such subdivisions and the purchaser pays the purchase money in full, taking receipts therefor but no conveyance, such purchaser acquires a perfect equity; but if his vendor afterwards sells for value and conveys by deed to a third person his original one undivided half of the whole tract, such third person, if unaffected with notice of the outstanding equity in the prior purchaser, will acquire title superior thereto in one undivided half of said subdivisions; if affected with such notice, his title will be subject to such equity. This is true whether the deed be recorded within twelve months from its execution or not.

4. A *bona fide* purchaser for value without notice, taking legal title from a purchaser and holder of the legal title affected with notice, is protected against an outstanding equity though it be a perfect equity. The evidence in this case did not require a finding that there was such possession as served either to give notice or to raise title by prescription.

December 7, 1891. By two Justices.

Title. Equity. Deeds. Evidence. Homestead. *Bona fide* purchaser. Before Judge MARSHALL J. CLARKE. Fulton superior court. March term, 1891.

The heirs at law of George W. Latham, his widow and minor children, filed their petition against Inman, for cancellation of two deeds held by him, as being a cloud on the plaintiffs' title to certain land, alleging as follows: Latham died in 1872. In 1870 he bought land sold as part of the estate of Atwood, lying in land lot 140

in Fulton county.   The land was auctioned off and sold
by lots according to a plat then used, and Latham pur-
chased, among other property, lots 19, 20, 21, 22, 23 and
24 of the plat, which lots lay in one block.   He paid
$200 therefor, and was declared the purchaser of the
land by the auctioneer of the Atwood estate, and so
entered on the auctioneer's books.   He was given pur-
chase money receipts by the agent of J. M. Atwood, the
heir to whom the proceeds of this sale went by some
sort of arrangement between the administrator and
heirs.   The sale was for purposes of distribution.   J. M.
Atwood being thus entitled to the proceeds of the
sale, Latham paid the money to said Atwood's agent,
who executed due acknowledgments.   Latham went
into immediate possession of the land and cleared it, but
his death in 1872 put a stop to further improvements
by him.   His administratrix (his wife) continued his
possession and has remained in possession up to the
present time, controlling the property, paying taxes on
it, using it for any purposes desired, keeping it in repair,
and about a month before the filing of the petition,
fenced it.   About 1877 J. M. Atwood made a deed to
Venable, both Atwood and Venable having actual and
constructive notice of petitioners' title.   On June 13,
1881 Venable sold the premises to Inman, who also had
actual and constructive notice and has never attempted
to go into actual possession of the land, but holds the
deed and claims title.   The conveyances from Atwood
to Venable and from Venable to Inman are void and a
cloud upon the title.   After the premises were fenced
in as stated above, certain negroes, acting under defend-
ant's directions, tore down the fence, etc.   Henry At-
wood in 1863 purchased the premises of one Rice, and
died intestate in 1864 seized and possessed of the prem-
ises, and administration was taken on his estate.   His
heirs were J. M. Atwood, Matilda Atwood and others

of his children. Commissioners were appointed to divide among his heirs the realty which had belonged to him, and the premises in question with other realty were awarded to J. M. Atwood and the legatees of Matilda Hopkins, formerly Atwood, in equal shares. J. M. and the representatives of Matilda partitioned the land, and the premises in question fell to J. M., etc.

Defendant in his answer denied that plaintiffs are or ever have been in possession of the premises, or that George Latham ever was, and insisted that the legal title was in himself and J. W. English.

By agreement the case was submitted to the judge without a jury. He found against the plaintiffs. They excepted to this judgment and to the overruling of their motion for a new trial.

The facts as found by the judge were, in brief, as follows: Henry Atwood died in 1864, owning a tract of about 85 acres of land embracing the land in question. In 1866 commissioners appointed for the purpose distributed his estate, assigning to Matilda and John M. Atwood, the children of Henry Atwood, an undivided half-interest in the tract, which action of the commissioners was made the judgment of the court in December, 1866. In August, 1870, one Thigpen made a plat on which the land was divided into blocks and the blocks into lots; one of the blocks contained the land now in litigation. It does not appear by what authority this plat was prepared. The land so platted was sold at public auction in September, 1870, but by whose direction was not shown. The sale was advertised by large bills in which the plat was copied, and the land described as "The Atwood Property." J. M. Atwood was present and bid off lots 19, 20 and 23 for himself and 21 and 22 for his mother, Mrs. Ann Atwood. The person who bid off number 24 refused to comply with his bid, and that lot was taken by J. M. "Various

members of the Atwood family," but who they were or what interest they had in the land the evidence did not show, were present at the sale and bid in much of the property. Miss Matilda Atwood, so far as the evidence indicated, had no knowledge of the sale and nothing to do with it. Sometime between this sale and December 30, 1870, J. M. Atwood made to George Latham a parol sale of the six lots mentioned, for $200, which was a fair price, and Latham by various payments to the agent of John M., paid the purchase money, the last payment being on October 12, 1872. In receipts given by this agent to Latham for these payments the land was variously described as "six lots, numbers 19 to 24 inclusive, of the Atwood property near West End, Rice place," "lots 19, 20, 21, 22, 23 and 24 of John M. Atwood, the Rice place beyond West End," and "six lots sold him of West End Atwood property." One of the receipts was signed "L. B. Davis, agent John M. Atwood," and others "L. B. Davis, agt." From very soon after his purchase to his death in 1873, Latham cut and corded wood on the land and hauled it to Atlanta for sale, in this way making a considerable clearing. He told persons that he owned the land and pointed out the lines. Since his death Mrs. Latham and her tenants have grazed cattle on the land, kept off trespassers, walled up and used a spring on it, kept the spring in repair and made a road leading to the spring. The tenants used the spring as a laundry, and for ten years prior to the fall of 1890 had benches and tubs there for such purpose. Some of them procured firewood and dead leaves from the land. No one interfered with such possession and it has been open and notorious. Latham never inclosed the land, nor did plaintiffs until the last of July, 1889, when they put around it a wire which defendant tore down in two or three weeks after it was put up, and upon its being restored

he again destroyed it. The land is vacant woodland covered with trees. The tenants mentioned did not reside on the land, but on an adjacent tract owned by plaintiffs. The spring is in the northwest corner of lot 22. On August 27, 1877, John M. Atwood made and delivered to one Camp a power of attorney with authority, for Atwood and in his name, "to ask, demand, sue for, recover, and make deeds to lands or lots of lands in Fulton county, Georgia," and "to make, seal and deliver, and to do all other lawful acts and things whatsoever, concerning the premises, as fully and in every respect" as Camp himself might or could do were he personally present. This was executed before only one witness, the ordinary of McIntosh county. In pursuance of this authority Camp, on August 31, 1877, conveyed to Venable all the interest of Atwood in the tract first mentioned, which was described as being "one $\frac{1}{48}$ undivided interest which said Atwood had as one of the heirs of Mrs. A. M. Atwood, and a $\frac{24}{48}$ undivided interest which he also held, in all $\frac{25}{48}$. This deed also recited the Thigpen plat, and was recorded together with the power of attorney on October 8, 1878. On April 1, 1878, Venable filed in Fulton superior court a petition against Jackson and others (to which petition neither the administratrix nor heirs of Latham were parties), alleging that they were tenants in common with him of the tract of land, and praying that it might be partitioned. On January 22, 1888 (?), a judgment of partition was rendered, in which lots 19, 20, 23 and 24 were assigned to Venable, and lots 21 and 22 to the executors of Mrs Ann Atwood. On June 13, 1881, Venable conveyed to Inman the lots set apart to him under the partition, and this deed was recorded June 25, 1881. On July 8, 1885, the executors of Mrs. Ann Atwood conveyed to English the lots allotted to them, which deed was recorded July 22, 1885. On July 21,

1885, English, by deed recorded July 22, 1885, conveyed a two thirds undivided interest in these lots to Inman. On June 18, 1887, J. M. Atwood made a deed to Inman, in which he recited the power of attorney to Camp, and the deed by Camp to Venable under such power, and confirmed the latter; the design of this conveyance being declared therein to be to protect defendant from any possible trouble because the power of attorney was attested by one witness only. This deed was duly recorded. From the time defendant became interested in the land he had a man employed to look after and keep off intruders, and neither he nor English had any notice whatever of the Latham claim before their purchase, nor until a few weeks before the petition was filed. As to whether Venable had notice of such claim when he bought, the evidence is conflicting. The judge concludes that Venable's purchase was without notice of Latham's rights; that George Latham became the owner as against John M. Atwood of an undivided half-interest in the land; that Venable's deed not having been recorded until twelve months from the date of its execution had expired, it cannot prevail over the equitable title of Latham, and if the present litigation were between Latham's heirs and Venable, they would recover an undivided half-interest in the premises in dispute; but that the suit is between them and Inman, and while Venable failed to record within the statutory period, Inman, who bought from him, was not so delinquent, his deed being duly registered.

In the motion for new trial it is alleged that the judgment is contrary to the evidence; and it is contended that, conceding the facts to be as found by the judge, the conclusions of law deduced therefrom are erroneous, because the grantee of a second purchaser who fails to record his conveyance in due time, stands in no better position, as respects the first purchaser, than the second

purchaser, notwithstanding such grantee records his conveyance within twelve months; because possession (which movant contends was shown by the acts found by the court) is notice actual or constructive, and neither Venable nor Inman could be purchasers in good faith when plaintiffs were in possession of the premises; because, independently of title by purchase, plaintiffs and their privy acquired title by prescription by holding the land openly, notoriously, continuously and adversely for over seven years under written evidence of title; and because, notwithstanding Venable and Inman may have been without actual knowledge of plaintiffs' claim, the law will impute to them knowledge from plaintiffs' possession.    It is also urged that the effect of the partition of Venable was to vest, by relation back, the title to lots 19, 20, 23 and 24 in J. M. Atwood, and in George Latham his privy in estate.

Another gound for new trial is that the court erred in excluding from evidence the original papers showing that in March, 1874, Mrs. Latham had the land in question (as belonging to the estate of George Latham) set apart as a homestead for herself and three minor children, and that the proceedings were duly recorded in the office of the clerk of the superior court of Fulton county on April 23, 1874.    It is contended that this homestead was notice of plaintiffs' claim, to Venable, Inman and their grantees and privies, and was admissible as color on which to found a prescriptive title, and as showing, in connection with other facts, the extent and good faith of plaintiffs' possession.

Authorities cited by the judge and by counsel: Code, §§1950, 1951, 2639, 2640, 2679, 2680, 2705, 3087; *Ga. Reports*, 3—5, 446; 7—432; 10—191, 253 ; 12—464; 13—1 ; 15—202 ; 17—600 ; 19—604 ; 20—732 ; 26—132, 183 ; 25—201, 648 ; 27—406, 637 ; 29—450, 485 ; 30—336, 619, 626 ; 32—239, 418, 532, 619 ; 33—539,

565; 35—81; 39—91; 45—34, 182; 48—461; 49—165; 51—15; 54—192; 55—91; 56—377; 57—158; 58—510; 60—114; 70—716; 71—374; 72—127; 10 Peters, 412; 11 *Id.* 41; 27 Fed. Rep. 160; Tiedeman, Real Prop. 773.

ARNOLD & ARNOLD and T. P. WESTMORELAND, for plaintiffs.

ELLIS & GRAY, for defendant.

BLECKLEY, Chief Justice.

1. The title of Mrs. Latham's deceased husband, or of herself and children as his heirs at law, was in no way strengthened by the fact that she claimed and had set apart a homestead in the premises for herself and the minor children. It was not error, therefore, to reject the record of the homestead proceedings tendered in evidence.

2. The action was not brought to recover possession, the plaintiffs alleging that they already had possession. The ultimate relief prayed for was that the two deeds under which the defendant claims (one from Atwood to Venable; the other from Venable to Inman, the defendant) be delivered into court and cancelled. To say nothing as to what other parties, if any, ought to be before the court in order to cancel these deeds, it is manifest that if the deeds pass title either to the whole or to an undivided part of the premises into Inman and constitute the muniments of such title, these plaintiffs could have no decree that the deeds be cancelled. The deeds might be too large and undertake to convey too much, but this would not subject them to cancellation if they carried title as against the plaintiffs to any part of the premises. The plaintiffs might be entitled to some other relief, but not to this. If the defendant is a tenant in common with them by reason of title to one undivided half of the premises being effectively conveyed by these deeds, there is no ground to cancel them.

3. If John M. Atwood was sole and exclusive owner of the small lots which were subdivisions of a larger tract in which he had an undivided half-ownership, and sold these lots by parol contract at auction to Latham, who paid the purchase money in full and took receipts therefor from the auctioneer, but no conveyance, Latham acquired a perfect equity. The plaintiffs, as his heirs at law, would be full and complete owners as against Atwood. The formal legal title would, however, be left in him, he holding it as trustee, first for Latham, and after his death for his heirs. The evidence might warrant the conclusion that such were the facts, but it also warrants the conclusion that whilst thus invested with title as trustee, Atwood through his attorney in fact sold and conveyed for value to Venable his original undivided half, together with a one forty-eighth, of the larger tract, thus passing into Venable by deed the formal legal title to one undivided half, with an additional one forty-eighth, of the small lots previously sold by Atwood to Latham. If Venable took with notice of Latham's rights, he would be affected thereby just as his vendor, Atwood, was affected, and would hold in trust to the extent of one half, and perhaps the additional forty-eighth, of these lots for Latham or his heirs. If, on the other hand, he paid his money and acquired title without such notice, he would not be affected by the outstanding equity, and, as to all the deed covers, would hold free from that equity, and from any trust in behalf of Latham or his heirs. This would be so whether he caused his deed to be recorded within twelve months after its execution or not, for the recording of a deed within that time is made indispensable by the statute only where there are two or more conveyances by the same grantor. The provision is not applicable to a case in which only one conveyance has been executed. Code, §2705; Cobb's Dig. 175; *Webb* v. *Wilcher,*

33 *Ga.* 565. The letter of the statute is confined to *deeds,* but as a bond for titles, being under seal, is in a large sense a deed, perhaps it could be treated as within the statute after payment of the purchase money in full. This assumption seems involved in *Allen* v. *Holding,* 29 *Ga.* 485, and in the same case on a second writ of error, 32 *Ga.* 418. And see *Nethery* v. *Payne,* 71 *Ga.* 374. But there is no ruling that a parol contract, or a mere receipt for purchase money, would prevail against a younger unrecorded deed made to a *bona fide* purchaser without notice.

An examination of the deed from Atwood to Venable shows that it left, if not an undivided half of these small lots, certainly an undivided part equal to twenty-three forty-eighths, outside of the scope of the conveyance; and consequently Venable never had, so far as appears, any conveyance which purported to pass title to him to more than an undivided share equal to twenty-five forty-eighths in these lots. It would thus seem that until Venable conveyed to Inman, he and Latham's heirs were tenants in common, even conceding that Venable was a purchaser from Atwood without notice. Nor was this tenancy in common necessarily dissolved by the judgment of partition by which some of these small lots were assigned to Venable in severalty. That judgment did not bind the plaintiffs, because of the general rule that judgments *inter partes* bind only parties thereto and their privies. Plaintiffs were not parties— not served nor otherwise notified of the proceeding. Therefore the judgment could not bind them. It was not an adjudication that Venable was the owner of the lots assigned to him as against the world, but only as against the parties to the judgment and their privies. It was not a judgment *in rem. Childs* v. *Hayman,* 72 *Ga.* 791. Venable's title was not strengthened by it. Its sole effect as against the world was to assign a defi-

nite abode to that title which was before a vagrant over the whole tract. The change wrought by the partition was merely in the *locus operandi*, and not in the strength of the title. Of course, if the parties to the partition, other than Venable, had the true title, or a better title than that of the plaintiffs, to the fractional interest in these small lots which was not covered by the deed from Atwood to Venable, then Venable did, by reason of the partition, acquire such true or better title in the particular lots assigned to him, if he was still without notice of the plaintiffs' equity; for by partition each tenant who participates in the division, where the property is divided in kind, gives to the others as much as he receives from them, and is therefore a purchaser for value of their interest in the parcel allotted to him.

4. Inman being a *bona fide* purchaser for value from Venable of a portion of the premises in controversy, would take all his rights in that portion of the premises, with the additional right of not being affected by any notice which Venable may have had of the Latham equity, unless he (Inman) also had notice. But in either event, he too might be a tenant in common with Latham's heirs to the same extent to which Venable was such tenant.

The finding of the judge that under the evidence before him there was not such possession in Latham or his heirs as served either to give notice of the Latham equity, or to raise title by prescription, may or may not have been correct. A careful examination and study of the evidence has convinced us that it was not sufficiently decisive to require a different finding from that made; and as the judge was the arbiter of the facts, chosen by the parties in lieu of a jury, we think they should abide by the conclusion at which he arrived. Though we differ with the judge in his interpretation and application

of the recording statute, we can still agree with him that the relief prayed for ought to have been denied.

*Judgment affirmed.*