## MACKEY *v.* BOWLES.

1. The purchase by an administrator at his own sale of land belonging to the estate of his intestate being voidable at the option of an heir upon his election, within a reasonable time, to set the sale aside, the administrator could not, in his own name and right, before the expiration of such time, convey to another who had notice of the facts a good title to the land.

2. Although a person who bargained with an administrator for land which the latter had purchased at his own sale, and which he was undertaking to sell in his own right, paid a part of the purchase money, gave a promissory note for the balance, took a bond for titles and entered into possession without notice or knowledge of any defect in his vendor's title, such person could not, as against the right of the heir to set the sale of the administrator to himself aside, be treated as a *bona fide* purchaser for value, if he discovered the truth before completing the payment of the purchase money, or taking a deed from his vendor.

3. On the trial of an equitable petition filed by such purchaser to enjoin an action brought by the vendor in a city court for the balance of the purchase money, the plaintiff would be entitled to obtain a rescission of the contract of purchase under a judgment adjusting all the equities between these parties.

4. It would not, under the facts recited, be incumbent upon the plaintiff, as a prerequisite to the right of rescission, to account to the defendant for the value of a house upon the land which had been destroyed by fire, unless it appeared that the burning was caused by the plaintiff's fault or negligence.

August 8, 1896.

Equitable petition. Before Judge Callaway. . Richmond superior court. April term, 1895.

*J. C. C. Black* and *Bryan Cumming,* for plaintiff.
*Fleming & Alexander,* for defendant.

LUMPKIN, Justice.

Joseph L. Bowles was the administrator of his deceased wife, of whom he and a minor son were the only heirs. As such administrator he sold a tract of land and became the purchaser of it at his own sale, this result being accomplished by his conveying the land to one Curtis, who conveyed it back to Bowles. Afterwards, the latter bargained the land to Mrs. Mackey, who paid a portion of the purchase money and went into possession, gave her note for the balance, and received from Bowles a bond for titles. While affairs were in this condition, she discovered the fact (of which she had previously been ignorant) that Bowles had purchased the land at his own sale as administrator; and in the meantime, a mill upon the premises, constituting a material element in the value of the property, had been destroyed by fire. Bowles brought an action against Mrs. Mackey for the unpaid purchase money; and she thereupon filed an equitable petition alleging, in substance, the facts above recited, and praying that the contract be rescinded, that she recover of the defendant certain sums which she had paid out for repairs, and also what she had paid upon the purchase price. She further prayed that the action brought by Bowles be enjoined, that the equities between herself and him be adjusted upon her petition, and for general relief. It does not appear how, or through whose fault, the fire above mentioned was occasioned. At the trial, the jury found that Mrs. Mackey was not entitled to a rescission, and that the defendant recover of her the balance of the purchase money for the property. The facts were practically undisputed; and whether or not the verdict can be sustained, depends upon the legal questions involved in the case.

1. This court, by repeated adjudications, has settled the law that a purchase by an administrator at his own sale of property belonging to the estate of his intestate is voidable at the option of an heir, upon his election within a

reasonable time to set the sale aside. It follows as an inevitable conclusion that the administrator could not, in his own name and right, before the expiration of such time, convey a good title to the land to one who did not occupy the position of a *bona fide* purchaser. It was practically conceded that the time had not yet expired within which the minor son of Bowles could exercise his option to set aside the purchase which his father had made from himself as administrator. It therefore becomes necessary to determine whether or not Mrs. Mackey is to be regarded as a *bona fide* purchaser from Bowles.

2. As will have been seen, Mrs. Mackey, at the time she contracted to purchase from Bowles, was ignorant of the fact that he had purchased at his own sale as administrator. In this connection, the court was requested to charge that if she discovered this fact before completing the payment of the purchase money, she would not be a *bona fide* purchaser without notice. This request was refused, and on this subject the court charged that if Mrs. Mackey did not know at the time of contracting with Bowles for the purchase of the land that he was a purchaser at his own sale as administrator, then she was a *bona fide* purchaser without notice. In his order overruling Mrs. Mackey's motion for a new trial, the judge stated that, in his opinion, the above charge was not sound as an abstract proposition of law, but refused the new trial because, in his judgment, the verdict for the defendant was demanded by the evidence. We agree with his honor that the charge in question was erroneous, but do not concur in his conclusion that the verdict was demanded.

Under the facts recited, Mrs. Mackey was not such a *bona fide* purchaser as that she could, by paying the balance of the purchase money and accepting a deed from Bowles, defeat the right of the minor to set aside the administrator's sale and assert title to an undivided half of the premises. "Want of notice both at making of purchase

and payment of purchase money must be shown, to constitute a person a *bona fide* purchaser; it is not sufficient that he had no notice when he purchased, if notice was given him before he paid over the purchase money." Warner *v.* Whittaker, 72 Am. Dec. 65, s. c. 6 Mich. 133. In the case just cited, it appeared that the purchaser had paid a part of the purchase money and given a· bond for the balance. The doctrine of this case is supported by the text in 16 Am. & Eng. Enc. of Law. See pages 834, 836 and 839, and the numerous cases cited in the notes. We make the following extract from page 839: "One who claims the protection of a court of equity as a *bona fide* purchaser, must show that he had acquired the legal title before notice or knowledge of facts equivalent to notice." In Losey *et al. v.* Simpson *et al.*, 11 N. J. Eq. 246, it was held that "Actual payment of the purchase money is, in general, necessary to the character of a *bona fide* purchaser for a valuable consideration, and giving a security, or executing an obligation for payment, will not be sufficient." In Wormley *et al. v.* Wormley *et al.*, 8 Wheat. 421, the Supreme Court of the United States laid down the rule that "A *bona fide* purchaser without notice, to be entitled to protection, must be so, not only at the time of the contract or conveyance, but until the purchase money is actually paid." The opinion in that case was delivered by Mr. Justice Story, who pronounced the doctrine just stated to be "a settled rule in equity." One of the earliest cases decided by our own court is to the same effect. It is that of *Phinizy et al. v. Few*, 19 *Ga.* 66. It appears in that case that Mrs. Few bargained to Phinizy a house and lot in Athens, under a contract by which she bound herself to make him "good and sufficient titles" to the property, he on his part promising to pay her $1,800 for the same. At the time this contract was made Phinizy had no notice or knowledge of any defect in Mrs. Few's title. He afterwards ascertained that certain executory devisees of Mrs.

Few's father had a title to, or lien upon, the property in question, and consequently refused to pay the purchase money. Mrs. Few then sued him upon the contract and obtained a judgment. Upon a review of the same, this court held that inasmuch as Phinizy received notice of an incumbrance upon the title before paying the purchase money, he could not, as a *bona fide* purchaser, complete the contract with Mrs. Few; and accordingly, that his defense to her suit was good. It will be observed that there is, in principle, quite a strong resemblance between that case and the case at bar.

In *Carter* v. *Pinckard*, 68 *Ga.* 817, this court decided that "To constitute one a *bona fide* purchaser for value and without notice, so as to hold a title obtained by his grantor by fraud, he must not only have had no notice, but must also have paid the purchase money." That was also a case in which a portion of the purchase money had been paid.

3. In the case last cited this court also held that in order to raise the question of protecting the purchaser to the extent of that portion of the purchase money which he had paid before notice, there must be appropriate pleadings. Mrs. Mackey's equitable petition clearly brings her case within this requirement, for, as will have been seen, she prays for a rescission and for a recovery of the money she had paid to Bowles while yet in ignorance of the defect in his title.

4. The remaining question is, upon whom, in adjusting the equities between the parties, should fall the loss occasioned by the burning of the mill? If the fire was attributable to the negligence of Mrs. Mackey, it would seem clear that the loss should be hers. As above stated, however, the record does not disclose how the fire occurred, or that it was occasioned by the fault of any person. The general rule seems to be that the destruction of a building after the making of a contract for the purchase of the land upon which it is situated, followed by possession on the part of

the purchaser, will constitute no defense to an action for the purchase money, for the reason that the purchaser at once acquires an equitable interest in the property, and in that sense immediately becomes the owner of it. Mc-Kechnie *et al. v.* Sterling, 48 Barb. 330. The same rule is laid down in 1 Warvelle on Vendors, 195. But the author adds: "This rule, in its application, presupposes an ability and a willingness to convey on the part of the vendor; for the purchaser in a case of this kind can only be said to be owner from the date of the contract, when the vendor is prepared to convey a clear title and is not in default. If the vendor is so situated that he cannot make title according to the contract, the purchaser will not be regarded as the owner; and if the property is damaged before the vendor is in condition to convey, the loss must fall on him and not on the purchaser." In support of the text, the cases of Christian *v.* Cabell, 22 Gratt. (Va.) 82, and Huguenin *v.* Courtenay, 21 S. Car. 403, are cited. In the first of these cases, the loss was caused by a fire; and in the latter, by a storm. In each of them it appears that the purchaser had not gone into possession before the damage occurred, and they are therefore not precisely applicable to our case. Nevertheless, we are of the opinion that, under the peculiar facts now under consideration, the qualification laid down by Warvelle to the general rule ought to control here, for the reason that Bowles not only has not now a title to the property, but also that it is not within his power within any reasonable time to acquire full title, and it is a matter of the greatest doubt and uncertainty whether he can ever do so at all. Under these circumstances, it would be neither fair nor equitable to treat Mrs. Mackey as an owner of the property upon whom the loss by fire should fall, because she is not in fact the owner, and there is no certainty that she can ever become so. Her right to rescind, which seems undoubted, rests upon the fact that there is no valid and mutually binding

contract between herself and Bowles, and it would be clearly inconsistent to make her, in the character of owner, responsible for the loss occasioned by fire, when it is obvious that nothing which she or Bowles, or both of them, can do could invest her with ownership, even if it was their present mutual desire and purpose so to do.

*Judgment reversed.*