### GLEATON *v.* WRIGHT. *et al.*

1. Under the rule in equity, to constitute one a bona fide purchaser in the full sense, three conditions must concur; he must pay the purchase-money, or at least place himself in a position where he is in all events bound to pay the purchase-money; he must get title; and he must pay the purchase-money and get title before notice of the rights of third persons.

(*a*) The rule in equity is applicable in the construction of the act of 1900 (Acts 1900, p. 68; Civil Code 1910, § 4213 et seq.), providing for the registry of bonds for title.   The primary intent and purpose of the act was to give notice to all persons dealing with the obligor, from the date of the filing of the bond, "of the interest and equity of

the holder of such bond in the property therein described," so that any one acquiring a lien on or title to the property after the filing of the bond would take the property subject to the interest and equity of the obligee in the bond.

(b) The obligee in a recorded bond is protected to the extent of purchase-money actually paid before notice of the rights of a grantee in a senior unrecorded deed from the obligor in the bond. The recorded bond for title does not take priority over the unrecorded senior deed to the extent of the entire estate purchased.

2. Under the pleadings and evidence, the court did not err in directing a verdict for the defendants.

No. 1201. JULY 16, 1919. REHEARING DENIED SEPTEMBER 5, 1919.

Petition for specific performance, etc. Before Judge Eve. Worth superior court. September 21, 1918.

On October 31, 1902, Mary D. Harris, in consideration of $390, conveyed to G. R. Wright the north half of lot of land No. 222 in the 14th district of Worth county. On December 12, 1902, G. R. Wright, in consideration of love and affection, conveyed the same land to Mrs. G. R. Wright, his wife. The deed was properly executed and attested, but was not recorded. Eight years after the execution and delivery of the deed from Wright to Mrs. Wright, Wright executed and delivered to M. M. Gleaton, the plaintiff, a bond for title to the land, Gleaton paying $25 in cash, and giving his note to Wright for the balance of $2175, payable at a future date, to wit, 2 months and 26 days after the date of the bond. The bond for title was attested as a deed and admitted to record. Wright and his wife lived upon the land at the time of the execution and delivery of the bond for title to Gleaton. When the note given by Gleaton to Wright matured, the latter went to the home of Wright for the purpose of paying the note. He was then advised by Mrs. Wright that she was the owner of the land, and that her husband had no authority to make a sale of the same. (According to the plaintiff's testimony he made a tender of the purchase-money before he received knowledge of Mrs. Wright's claim.) Mr. Wright was not at home, but a short time thereafter Gleaton tendered to Wright $2175, according to the terms of the bond for title. Wright declined to accept the money, and stated to Gleaton that title to the land was in Mrs. Wright, and that she refused to ratify the sale made by him to Gleaton and refused to convey the land. Gleaton filed suit against Mr. and Mrs. Wright, praying for specific performance of the contract, and for cancellation of the deed made by Wright to Mrs. Wright. There was no alter-

native prayer for damages. Upon the trial of the case it appeared that at the time of the execution and delivery of the bond for title Gleaton had no notice or knowledge of Mrs. Wright's claim to the land. It also appeared that the mother of Mrs. Wright furnished and paid for Mrs. Wright a part of the purchase-price of the land in controversy. The note given by Gleaton to Wright was never transferred to any person. Both the note and the $25, with interest, were tendered to the plaintiff before the beginning of the trial of the case, and as a continuing offer both were, under the order of the presiding judge, deposited for the plaintiff with the clerk of the court. At the conclusion of the evidence the court directed a verdict for the defendants, and the plaintiff excepted.

*J. H. Tipton* and *Pope & Bennet,* for plaintiff.

*J. B. Williamson* and *J. Mark Tison,* for defendants.

GEORGE, J. Mr. and Mrs. Wright (husband and wife) were in the actual possession of the land in controversy. The record title was in the husband. Presumptively he was the owner of the land. He offered to sell, and executed to the plaintiff in error his bond for title, conditioned to convey the land upon the payment of the agreed purchase-price. Mrs. Wright's possession did not constitute notice, under section 4528 of the Civil Code, of her right and title to the land. *Austin* v. *Southern Home Building & Loan Association,* 122 *Ga.* 439 (50 S. E. 382) ; *Dix* v. *Wilkinson,* 149 *Ga.* 103 (99 S. E. 437). The plaintiff in error did not have actual notice of Mrs. Wright's deed to the land at the time of the execution and delivery to him of the bond for title. The question presented, therefore, is whether, under our registry laws, a subsequent purchaser of land under a recorded bond for title, who has made a partial payment, without notice, actual or constructive, of a prior unrecorded deed, acquires title superior to the title of the grantee in the deed. It is insisted that a bond for title is a deed within the meaning of section 4198 of our code, the contention being that a bond for title is a "deed of bargain and sale," vesting the holder of the bond with the ownership of the land, subject only to the payment of the balance of the purchase-money, and that the holder in the instant case was a "purchaser without notice" of Mrs. Wright's deed. Section 4198 of the Civil Code provides that a deed may be recorded at any time, "but such deed loses its priority over a subsequent recorded deed from the same vendor, taken with-

out notice of the existence of the first." In a sense a bond for title "under seal," and executed with the formality prescribed for the execution of a deed to land, is "a deed of bargain and sale." See *Allen* v. *Holding,* 29 *Ga.* 485, 489; *Latham* v. *Inman,* 88 *Ga.* 505, 514. It is not, however, a deed within the meaning of section 4198 of the code. It is said, however, that the act of 1900 (Acts 1900, p. 68; Civil Code, § 4231 et seq.), providing for the registry of bonds for title, placed them on the same footing as deeds, and therefore that the rights of the plaintiff under his recorded bond for title were the same as though he had procured a deed instead of a bond for title. The part of the act of 1900 material here is as follows: "Bonds for title to land or any interest therein shall, when executed with the formality now prescribed for the execution of deeds to land, be admissible to record in the county where the property therein described is located. Such record shall, from the date of filing, be notice of the interest and equity of the holder of such bond in the property therein described." Prior to this act there was no law in this State authorizing the recording of bonds for title. *Beverly* v. *Burke,* 9 *Ga.* 440 (1); Powell's Actions for Land, § 279. The primary intent and purpose of the act, where the vendor remained in possession, was to give notice to any and all persons dealing with the vendor or obligor, from the date of the filing of the bond, of the interest and equity of the obligee in the particular property, so that any one acquiring a lien on or title to the property after the filing of the bond would take such property subject to the interest and equities of the obligee in the bond.

The act did not change the legal status of bona fide purchasers. Whatever may be the rule elsewhere, in this State a senior unrecorded deed, taken for value, loses its priority over a junior *recorded* deed from the same vendor when the junior deed is taken without knowledge or notice of the senior deed. Civil Code (1910), § 4198; *Wadley Lumber Co.* v. *Lott,* 130 *Ga.* 135 (2), 139-141 (60 S. E. 836); *Payton* v. *Payton,* 148 *Ga.* 486 (97 S. E. 69). Our recording acts, being "in derogation of the rights of property," are construed strictly. *Hackney* v. *Rome,* 33 *Ga.* 231, 234. Under the facts in this case, Mrs. Wright's deed is not a voluntary conveyance; in order to give the bond for title priority over her deed, the plaintiff in error must occupy the position of a bona fide purchaser for value.

Unquestionably he is a bona fide purchaser so far as the cash payment of $25 is concerned. His note, given for practically the full purchase-price of the property, was never transferred, but was tendered to him on the trial of the case. Equity regards the plaintiff in error as having a property right from the moment of his contract; but in order for him to be considered a bona fide purchaser in the full sense, three conditions must concur: he must pay the purchase-money; he must get title; and he must pay all the purchase-money and get title before notice of the rights of the grantee in the unrecorded deed. Clark's Equity, § 85. This is the doctrine announced by this court and sustained by the weight of authority. In *Donalson* v. *Thomason,* 137 *Ga.* 848, 851 (74 S. E. 762), Presiding Justice Evans said: "It is a rule in equity that a bona fide purchaser without notice, to be entitled to protection, must be so, not only at the time of the contract or conveyance, but until the purchase-money is actually paid. . . A partial payment of the purchase-money before notice, although not sufficient to invest the vendee with the character of a bona fide purchaser as regards the entire estate purchased, will entitle him to invoke the aid of the equitable principle that he who asks equity must do equity and reimburse the amount actually paid." The Georgia cases cited in support of this doctrine are *Phinizy* v. *Few,* 19 *Ga.* 66; *Mackey* v. *Bowles,* 98 *Ga.* 733 (25 S. E. 834); and *Carter* v. *Pinckard,* 68 *Ga.* 817. In *Losey* v. *Simpson,* 11 N. J. Eq. 246 (4), the rule is stated as follows: "Actual payment of the purchase-money is, in general, necessary to the character of a bona fide purchaser for a valuable consideration, and giving of a security, or executing an obligation for payment, will not be sufficient." Had Wright transferred the note given by the plaintiff in error to an innocent purchaser for value, so that the plaintiff in error would in all events have been compellable to pay the note, he would have occupied the position of a bona fide purchaser for value. The rule of equity discussed above is the rule at law, and is applicable in the construction of our registry acts. It is not sufficient that the plaintiff in error made his contract to purchase without notice of Mrs. Wright's title to the land. He must have paid the purchase-money without notice of her deed. Whether the tender by him of the balance of the purchase-money was made before or after notice of Mrs. Wright's deed is, in our view of the

matter, immaterial. The fact is that he has not paid the purchase-money and that he has knowledge of Mrs. Wright's deed. Equity will not permit him to better his condition by the tender or the payment of the purchase-money after actual notice of Mrs. Wright's deed. The tender of his note, together with the $25 cash payment, with interest on the latter, is the full relief to which the plaintiff in error was entitled, under the evidence in this case. It must be borne in mind that this is not a case of competition between a junior recorded bond for title and a senior unrecorded bond, the common obligor remaining in possession.

No question of estoppel is involved under the facts in the record. It unequivocally appears from the evidence that Mrs. Wright knew nothing of the transaction between the plaintiff in error and her husband and did not ratify the same. The jury would not have been authorized to find that Mrs. Wright never accepted the deed from her husband. A contrary finding was demanded. Nor was the plaintiff entitled to have damages against either of the defendants. The suit was simply one for specific performance. There was no alternative prayer, and the evidence did not authorize a verdict for damages against either of the defendants. There was no error in directing a verdict for the defendants.

　　　　　　*Judgment affirmed. All the Justices concur.*