ROSS *v.* RAMBO *et al.*

No. 14349. December 1, 1942.

104

A. H. *Gray,* for plaintiff in error.

*Bennet, Peacock & Perry, Vance Custer,* and *J. W. Bonner,* contra.

GRICE, Justice. ■ ■ This case involves the law concerning the tracing of trust funds, and of the respective rights of the beneficial owners against one to whom the trustee ex maleficio sold the property in which the funds were invested, and of one who purchased from the trustee. Certain legal principles will first be

adverted to, and used as touchstones with which to measure these respective rights.

Implied trusts are such as are inferred by law from the nature of the transaction or the conduct of the parties. Code, § 108-104. Trusts are implied whenever the legal title is in one person, but the beneficial interest, either from the payment of the purchase-money or other circumstances, is either wholly or partially in another, or where, from any fraud, one person obtains the title to the property which rightfully belongs to another. § 108-106. Whenever the circumstances are such that the person taking the legal title, either from fraud or otherwise, can not enjoy the beneficial interest without violating some established principle of equity, the court will declare him a trustee for the person beneficially entitled, if such person shall not have waived his right by subsequent ratification or long acquiescence. § 108-107. The beneficiary of a trust estate may affirm or reject an unauthorized investment by the trustee. § 108-424. "A bona fide purchaser for value, and without notice of an equity, will not be interfered with by equity." § 37-111. "Equity will grant relief as between the original parties or their privies in law, in fact, or in estate, except bona fide purchasers for value without notice." § 37-213. "A title obtained by fraud, though voidable in the vendee, will be protected in a bona fide purchaser without notice." § 96-208.

Under the facts as found by the auditor, the money of the complainants was used by Hendricks without authority. He thereby became a trustee ex maleficio in the purchase of these lands, taking title in his own name. The beneficial interest was in them who had the right to affirm the unauthorized investment, and to follow the funds. "All persons aiding and assisting trustees of any character, with a knowledge of their misconduct, in misapplying assets, are directly accountable to the persons injured." Code, § 108-423. "When assets are misapplied and can be traced in the hands of persons affected with notice of the misapplication, the trust shall attach to the assets, and equity will aid in restoring them to their legitimate purpose." § 108-425. "The purchaser from a trustee, with actual or constructive notice of the trust, shall hold as trustee for the beneficiaries; if the purchase is bona fide and without notice, the purchaser shall hold the property freed from the trust." § 108-416.

The auditor found that Ross was without notice of the claim of the beneficiaries until the year 1934, he having gone into possession of said lands in the year 1928 under a contract to purchase same from Hendricks, and that Ross farmed them in 1928, 1929, and 1930. The auditor found also that Ross had not paid the purchase-price in full, nor had he received a deed before he received notice of the equities of the complainants. It is therefore insisted that Ross never became an innocent purchaser within the purview of the Code section last cited.

The case of *Carter* v. *Pinckard*, 68 *Ga.* 817, is inadequately reported. In the first headnote it is stated: "To constitute one a bona fide purchaser for value and without notice, so as to hold a title obtained by his grantor by fraud, he must not only have had no notice, but must also have paid the purchase-money." In *Mackey* v. *Bowles*, 98 *Ga.* 730 (2) (25 S. E. 834), it was ruled: "Although a person who bargained with an administrator for land which the latter had purchased at his own sale, and which he was undertaking to sell in his own right, paid a part of the purchase-money, gave a promissory note for the balance, took a bond for titles, and entered into possession without notice or knowledge of any defect in his vendor's title, such person could not, as against the right of the heir to set the sale of the administrator to himself aside, be treated as a bona fide purchaser for value, if he discovered the truth before completing the payment of the purchase-money, or taking a deed from his vendor." In *Donalson* v. *Thomason*, 137 *Ga.* 848 (74 S. E. 762), it was held that it is a rule in equity that a bona fide purchaser without notice, to be entitled to protection, must be so, not only at the time of the contract or conveyance, but until the purchase-money is actually paid. See *Dodd* v. *Bond*, 88 *Ga.* 355 (14 S. E. 581). In *Gleaton* v. *Wright*, 149 *Ga.* 220 (100 S. E. 72), the pronouncement was: "Under the rule in equity, to constitute one a bona fide purchaser in the full sense, three conditions must concur; he must pay the purchase-money, or at least place himself in a position where he is in all events bound to pay the purchase-money; he must get title; and he must pay the purchase-money and get title before notice of the rights of third persons." In *Rowe* v. *Gaskins*, 148 *Ga.* 817 (98 S. E. 493), may be found this statement: "It is well settled that the actual payment, before notice, of the purchase-price is essential

to the maintenance of the claim that one is a bona fide purchaser of property for value and without notice." Under these authorities, it must be held that Ross is not a bona fide purchaser, so as to prevent the complainants from asserting their secret equity as against him.

■ A partial payment of the purchase-money before notice of the equitable title of the true owners, although not sufficient to invest the vendee with the character of a bona fide purchaser as regards the entire estate purchased, will entitle him to invoke the aid of the equitable principle that he who asks equity must do equity and to be reimbursed for the amount actually paid before. *Donalson* v. *Thomason,* and *Gleaton* v. *Wright,* supra. See the discussion in 4 Bogert on Trusts, 2586, § 890.

Before the entering of the final decree, appropriate pleadings were filed by Ross, claiming protection for certain payments alleged to have been made by him before notice. The auditor found that certain payments had been made on the purchase-price. The record must be examined in order to ascertain whether with respect to this matter error was committed in entering the decree on the report of the auditor.

Having elected to affirm the unauthorized investment of their funds in these lands, this necessarily carries with it a right to claim all the gains and advantages arising therefrom. *Rogers* v. *Dickey,* 117 *Ga.* 819, 822 (45 S. E. 71). Compare *Fricker* v. *Americus Manufacturing &c. Co.,* 124 *Ga.* 165 (10) (52 S. E. 65); *Forlaw* v. *Augusta Naval Stores Co.,* 124 *Ga.* 261 (6) (52 S. E. 898); *Stover* v. *Atlantic Ice & Coal Corporation,* 154 *Ga.* 228 (113 S. E. 802). We think it follows that Ross is not entitled to have the plaintiffs reimburse him for the rents collected by him for the use and occupation of the land, and by him turned over to Hendricks, even though done before receiving notice of the equity of the plaintiffs. These rents belonged to the complainants, and, when delivered by Ross to Hendricks, should not be taken into account in determining the equities of the parties. It was erroneous for the auditor to allow Ross credit for them.

Nor is Ross entitled to the credit allowed him by the auditor (finding of law 8), to wit, the principal of the Ike Glenn note, $2642.46, which is referred to in finding of fact 31 as given for a part of the Ross place. That on December 15, 1928, Hendricks

and Ross made an agreement by which Glenn was given a bond for title to 150 acres of the land, in exchange for his note in the sum named, can not credit any equity in Ross, so as to permit him to be reimbursed for that amount in a suit filed by the plaintiffs in the instant case. What Ike Glenn's rights are or may be can not be here decided, he not being a party to the suit; but there is nothing in the transaction to justify it as representing purchase-money paid by Ross and for which he is entitled to reimbursement. When the rents and the Ike Glenn notes are eliminated, the other item left is $522.80 balance after paying account, shown in finding of fact 35 by the auditor. We have here a finding of fact that as of December 1, 1929, Ross paid Hendricks $1741.44 above his running account for that year's advances; but in that finding it definitely appears that, included in the sum total of payments from which the debits were deducted, the auditor allowed Ross credits of $3472.80, to which he was not entitled. The $522.80 is arrived at in this way: The findings of the auditor were that the plaintiff in error was in possession of the entire Ross place on December 18, 1928; and there is a further finding that he operated it in the years 1928, 1929, 1930, and 1931; that he operated it in 1928, 1929, and 1930 partly by tenants, who paid their rents to Hendricks, to be credited to Ross; that in 1928 and 1929 Ross received for himself and his tenants various advances from Hendricks; that his "advance account" with Hendricks for the year 1928 was paid in full; that for 1930 and 1931 the only payments found by the auditor to have been made by Hendricks to Ross were rents from four named tenants on the place. Therefore if any payment was made which did not represent rents collected from the tenants on the place, it was for the year 1929. As to that, the finding of the auditor was that the total amount of credits to which Ross was that year entitled amounted to $4595.60. Of this amount, however, $3472.80 was rent collected from named tenants on the place. The difference between the two amounts is $522.80, which is the balance of the sum which the auditor finds Ross paid Hendricks, when the rents shown in the auditor's finding are deducted. The last date on the account for the year 1929, as shown by finding of fact 35, is December 1, 1929.

Under the applicable principle hereinbefore referred to, Ross is entitled to be reimbursed therefor.

While dealing with rents, it is well to note that neither in the plaintiffs' motion to enter a decree in their favor on the findings of fact as reported by the auditor, nor in the decree itself, were rents mentioned; and no exception is taken on the ground that the decree is silent as to these. In determining the rights of the respective parties, placed as the plaintiffs and the defendant Ross were, we have not gone into the abstract question as to whether, when in a case like this the beneficial owner recovers the property, he is also entitled to have an accounting for the rents, issues, and profits. As to this, see generally, *Fricker* v. *Americus Mfg. &c. Co.,* supra; 65 C. J. §§ 214, 216, 893, 897, 910, 999; Wormley *v.* Wormley, 8 Wheat. (U. S.) 421 (5 L. ed. 651) ; Code, § 108-424.

■ One of the findings of law by the auditor was that title be decreed in Ross, less the land described in Glenn's bond for title, to be vested in John B. Ross subject to the indebtedness which represents the balance of the purchase-price which he had agreed to pay Hendricks therefor. In view of this, could the court, on motion of complainants, enter in their favor a decree that they recover the lands involved? As elsewhere shown, the auditor found certain facts the legal effect of which was that the plaintiffs were the owners of the property, and made other findings of fact the legal effect of which was that Ross was not a bona fide purchaser for value. With these basic findings of fact, the auditor erred in his findings of law as to the decree to be entered. When an auditor upon facts found by him reaches a wrong legal conclusion as to what kind of a decree should be entered, the judge can and should correct such erroneous conclusion of law, and render the correct decree under the findings of fact by the auditor. *Wiley* v. *Sparta,* 154 *Ga.* 1 (114 S. E. 45, 25 A. L. R. 1432). That certain findings of fact, to which the plaintiffs filed exceptions which had not been disposed of, is no reason why the judge should not on motion enter the decree he did, based as it was on those findings of fact which were controlling. *Robinson* v. *Reese,* 175 *Ga.* 574, 581 (165 S. E. 744). But on such motion to enter a decree on the findings of fact as made by the auditor, the plaintiffs waived such exceptions theretofore filed by them. Nor was it erroneous to refuse to recommit the case to the auditor, since his detailed and specific findings of fact covered the issues, and were sufficient, without more, to form the basis of a proper decree.

■■ Since, under the law as applied to the facts found by the auditor, the defendant Ross was entitled to be reimbursed by the plaintiffs in the sum of $522.80 together with interest, the same being a payment made by him in good faith to the holder of the legal title, before notice that the equitable ownership was in the plaintiffs, a reversal will not result, since, under the circumstances here presented, this court can in its judgment give such direction as is consistent with the law and justice of the case. Code, §§ 6-1610, 24-3901(2); *United States Fidelity & Guaranty Co.* v. *Clarke,* 187 *Ga.* 774 (2 S. E. 2d, 608); *Bank of Tupelo* v. *Collier,* 191 *Ga.* 852 (14 S. E. 2d, 59). Therefore direction is given that the judgment be so modified as to include a provision that the plaintiffs shall reimburse Ross in the sum of $522.80, with interest from December 1, 1929, at the rate of seven per cent. per annum, and that Ross be given a lien for that amount on the land involved. Since the effect of the judgment of affirmance with direction is to materially modify the same to the substantial benefit of the plaintiff in error, let the costs which accrued as the result of suing out this writ of error be taxed against defendants in error.

*Judgment affirmed, with direction. All the Justices concur.*