1. One whose money is used without authority by another to purchase lands, taking the title thereto in the latter's name, may elect to affirm the unauthorized act, and recover the property, together with the rents, issues, and profits thereof, even as against one to whom the latter has made a conveyance thereto, unless such transferee be a bona fide purchaser for value.
2. Such a transferee is not an innocent purchaser for value unless, before the time he had knowledge that the equitable title thereto was in another, he had paid the full purchase-price and received a deed to the property. Whether or not actual payment of a part of the purchase price and the giving of a note for the balance, which is in the hands of a holder in due course, or the giving of such note for the whole, will be the equivalent of the actual payment of the money, is a question which does not arise under this record.
3. (a) A partial payment of the purchase-money before notice that the seller had no beneficial interest in the subject-matter of the sale, but that instead the equitable ownership was in a third person, will entitle such purchaser to invoke the principle that he who seeks equity must do equity, and to have reimbursement made to him for the amount so actually paid.
(b) Whether or not actual payment of a part of the purchase-price and the giving of a note for the balance, which is in the hands of a holder in due course, or the giving of such note for the whole, may be sufficient to invoke the principle just referred to, or whether or not there may be other circumstances that render it inequitable for the holder of the beneficial interest to recover the same without an adjustment of other possible equities involved, are questions not now before us. *Page 101 
4. "A decree is the judgment of the judge in equitable proceedings upon the facts ascertained, and should be signed by him and entered on the minutes of the court." Code, § 37-1201. When under certain findings of facts reported by the auditor, which are unexpected to by the defendant, the plaintiffs are entitled to prevail, the judge has the power and it is his duty to correct any erroneous conclusions of law as reported by the auditor, by rendering such decree as is proper in applying the law to the facts thus ascertained, and thereby correcting the errors of law appearing in the face of the auditor's report. This is true although to certain findings of fact the plaintiff had filed exceptions which had not been disposed of.
5. This court will not reverse the decree of the trial court in order to correct an error respecting one item thereof, while in other respects affirming it, when, under the Code, §§ 6-1610 and 24-3901 (2), direction may be given by this court concerning such item, consistently with law and justice as already found by the fact-finding tribunal, as the same appears of record in the case.
6. Since the effect of the affirmance with direction is to materially modify the judgment, the costs attendant upon the suing out of this writ of error are taxed against the defendants in error.
 No. 14349. DECEMBER 1, 1942.
Clifton J. Rambo and F. Eugene Rambo (a minor suing by his guardian) brought suit against J. B. Ross and T. N. Hendricks, alleging that the plaintiffs were owners of lands described; that the lands were purchased by Hendricks with funds belonging to the plaintiffs; that the title was taken in the name of Hendricks, who thereafter placed Ross in possession; that later a deed appeared of record, purporting to be from Hendricks conveying said lands to Ross, reciting that it was made for the purpose of carrying out an original agreement between them; and that said deed was fraudulent. The prayer was that this deed be canceled; that it be decreed that the plaintiffs are the owners of the property; and that judgment be entered against Ross for the rents, issues, and profits. Hendricks did not answer. Ross's answer put the plaintiffs on proof of the material allegations of their petition. He set up a verbal agreement with Hendricks to purchase from him, the entering of possession by virtue thereof, the payment of large sums on the purchase-price, a settlement between him and Hendricks, and the execution of a deed to him by Hendricks. He prayed for judgment against the plaintiffs, and, if it should be held that he was not entitled to specific performance of his contract of *Page 102 
purchase, that he recover the amounts of money paid by him on the purchase-price.
The case was referred to an auditor, by whom the following findings of fact were made:
"1. C. J. Rambo died intestate in December, 1921, leaving the plaintiffs as his only children and heirs at law, and leaving a widow, Mrs. Ruth Hendricks (then Mrs. Ruth Rambo).
"2. The estate of C. J. Rambo consisted of personal and real property of the aggregate value of about $400,000, and the widow, then Mrs. Ruth Rambo, qualified as administratrix thereof.
"3. In the year 1924 the widow married T. N. Hendricks, took him into her home, and permitted him to assist her in squandering, mismanaging, and losing a large part of the funds and property of the C. J. Rambo estate. From the time of this marriage T. N. Hendricks and his wife handled the affairs and moneys of the Rambo estate without let or hindrance, without any orders from the court of ordinary, and as though they owned such assets themselves in fee simple, and with the utmost disregard of the rights of the present plaintiffs.
"4. Prior to November 1, 1927, T. N. Hendricks and his wife had spent or lost more than one third of the C. J. Rambo estate.
"5. From August 25, 1925, to October 23, 1933, there was at the Bank of Edison, at Edison, Georgia, a bank account denominated "Mrs. Ruth Hendricks, Special," which was in reality owned by the estate of C. J. Rambo and the beneficiaries thereof; and it consisted of moneys belonging to such estate and its beneficiaries.
"6. Mrs. Ruth Hendricks and said bank permitted T. N. Hendricks to draw checks upon said account, signed `T. N. Hendricks, Special.'
"7. From this bank account and from funds of the C. J. Rambo estate T. N. Hendricks furnished defendant various moneys through the year 1927, and such moneys were repaid him by defendant John B. Ross.
"8. Jim Ross, the father of John B. Ross, died in the year 1926 or the year 1927 in possession of certain lands in Early County, Georgia, known as the Ross place and fully described in the first paragraph of the petition in this case.
"9. The administrator of the Jim Ross estate brought these lands to sale on the first Tuesday in November, 1927. *Page 103 
"10. Defendant John B. Ross desired to buy the said Ross place, was without the necessary cash with which to do so, and approached T. N. Hendricks upon the matter of Hendricks buying the place for him; and as a result Hendricks attended the administrator's sale and bought in the lands thereat, receiving a deed thereto from the administrator of Jim Ross.
"11. Said Ross place was sold at the administrator's sale subject to outstanding taxes and outstanding security deeds, at and for the price of $2420, which amount was paid the administrator by Hendricks by a check drawn on the bank account hereinbefore referred to.
"12. Prior to the administrator's sale Hendricks gave Ross a written memorandum or agreement to the effect that Hendricks would buy in the lands at the sale, and that Ross could then have them by repaying Hendricks what he had expended therefor, plus $1000 for his handling the matter. This paper was afterwards lost or destroyed.
"13. After the administrator's sale Hendricks permitted defendant Ross to go into possession of all the Ross place under an agreement between them that Ross was to obtain a loan upon it and from such loan Hendricks was to be repaid what he had expended in buying such Ross place and in paying off liens upon it, plus $1000 for Hendricks' profit on the transaction; and there was no agreement between them with reference to Ross paying any rent for the place."
Findings of fact 14-15 related to an effort on the part of Ross while in possession to obtain from Federal Land Bank a loan on the property, with which to pay Hendricks, as well as to discharge other liens upon it. The effort failed.
"16. At the time of the administrator's sale there was outstanding against a portion of the Ross place a security deed made by Jim Ross to the Citizens Bank, and by it transferred to a Mrs. Hill, same having been recorded at page 125 of deed book 37 in the office of the clerk of the superior court of Early County, Georgia, which, with the debts it secured, were transferred and assigned to Mrs. T. N. Hendricks upon payment to Mrs. Hill of the amount due thereon on October 12, 1927, in the sum of $2032.98, such payment being made to Mrs. Hill by a check drawn upon the *Page 104 
bank account hereinbefore referred to, such check being signed `T. N. Hendricks, Special.'
"17. The auditor specifically finds, as matter of fact, that the paper dated November 18, 1929, purporting to be signed by T. N. Hendricks and purporting to be accepted in writing by John B. Ross, was not signed by John B. Ross. (This paper was introduced in evidence by the plaintiffs.)
"18. The auditor finds, as a matter of fact, that the bank account hereinbefore referred to was not established by Mrs. Ruth Hendricks for the purpose of keeping separate the funds belonging to her two children, but merely as a matter of convenience."
19-21. These findings of fact relate to the swearing out by Hendricks of a warrant to dispossess Ross as a tenant, the filing of a counter-affidavit by Ross, including a prayer that Hendricks be made to specifically perform his contract of sale.
"22. In March, 1931, T. N. Hendricks executed a deed to Mrs. T. N. Hendricks to the entire Ross place, the same being recorded in the office of the clerk of the court on January 15, 1934.
"23. On November 8, 1932, Mrs. Hendricks executed a deed to the entire Ross place to the plaintiffs, same being recorded in the office of the clerk of the court on January 15, 1934. This deed is signed by Mrs. Hendricks individually, but recites that it is made by her as guardian of the plaintiffs `in consideration of $1.00 and in discharge of her trust.'
"24. On December 23, 1937 (after T. N. Hendricks and Mrs. T. N. Hendricks had separated and were no longer living together), T. N. Hendricks executed and delivered to John B. Ross, for a consideration of two hundred fifty dollars (the deed reciting `ten dollars and other valuable consideration') a deed to the entire Ross place, which was recorded on January 17, 1938, and which recited that the deed was made to carry into effect an original agreement between the parties by which Hendricks had agreed to convey the lands to Ross upon performance of certain conditions by Ross, that Hendricks acknowledged their performance; that the deed is also made in settlement of the dispossessory warrant litigation, the said Hendricks releasing all claim asserted by him in that litigation against Ross."
25-27. (Findings relative to matters not germane to the issues here involved.) *Page 105 
"28. At the time the deed referred to in finding of fact No. 22 was executed, Mrs. T. N. Hendricks was guardian of the present plaintiffs, and she was described and referred to in said deed as `Mrs. T. N. Hendricks, Int.,' there being no evidence as to what the `Int.' stood for or meant.
"29. About November 8, 1931, the plaintiffs, by their next friend J. R. Seely (who is the brother of Mrs. T. N. Hendricks), petitioned the court of ordinary of Calhoun County, Georgia, for an accounting from their mother (Mrs. T. N. Hendricks), who was their guardian.
"30. On November 8, 1931, that court of ordinary passed an order requiring plaintiffs' guardian-mother to account, and J. R. Seely was appointed their guardian in her stead. On that day the mother made a `general settlement' of her wards' money and property, and as a part thereof executed the deed referred to in finding of fact No. 23 above.
"31. On December 15, 1928, by agreement between T. N. Hendricks and John B. Ross, Hendricks gave Ike Glenn (a brother-in-law of Ross) a bond for title to 150 acres off the south side of lot of land number 16 in the 5th land district of Early County (a part of the Ross place), in exchange for Glenn's note of $2642.46, with the understanding and agreement that this sum was to be credited against the total purchase-price of the place.
"32. Ross operated the entire Ross place in the years 1928, 1929, and 1930, partly by tenants, who paid their rent to Hendricks to be credited to Ross.
"33. In the years 1928 and 1929 Ross received, for himself and his tenants, various advances from Hendricks with which to make the crops on the place in those years.
"34. John B. Ross's `advance account' with T. N. Hendricks for the year 1928 was paid in the fall of that year.
"35. John B. Ross's `advance account' with T. N. Hendricks for the year 1929 was as follows [items stated], leaving `balance after paying account $1741.44.'
"36. That John B. Ross is due the balance of $1741.44 on his 1929 `running' or `advance' account as a credit on the purchase-price of the Ross place.
"37. John B. Ross operated the entire Ross place in the years 1930 and 1931, partly by tenants, who paid their rents for said *Page 106 
years directly to T. N. Hendricks, to be credited to Ross upon the purchase-price of said place.
"38. In the year 1930 John B. Ross rented portions of the Ross place to tenants who paid their year's rent directly to T. N. Hendricks for credit on Ross's purchase-price of said place, the names of the tenants and the amounts so paid by them being stated, for which total of $1210 he is to be credited on the purchase of said Ross place.
"40. In the years 1932, 1933, 1934, 1935, 1936, 1937, 1938, and 1939 T. N. Hendricks, or Mrs. T. N. Hendricks, or J. R. Seely as plaintiff's guardian have used and collected the rents on all the cultivatable parts of the Ross place (except the portion described in the dispossessory warrant), and such use of said lands is worth the sum of eight hundred twenty-five dollars . . for each of said eight years; that is to say, the rental value of the lands so used and rented by them is of that value.
"41. The Ross place (with the exception of the lands described in the dispossessory warrant and the lands described in the Ike Glenn bond for title) has been used and rented out by T. N. Hendricks, and after him by J. R. Seely as guardian for the plaintiffs during the years 1932-1939, both inclusive, without and against the consent of Ross.
"42. Ross has been in possession of the lands described in the dispossessory warrant continuously since January 1st, 1928.
"43. Ross's claim that he went into possession of the entire place about January 1st, 1928, under an agreement of sale thereof made between him and Hendricks, was known to Hendricks, Mrs. Hendricks, and J. R. Seely at all times since January 1, 1928.
"44. The dispossessory warrant hereinbefore referred to was dismissed by Hendricks before the present suit was filed.
"45. At the time Hendricks executed to Ross the deed referred to in finding of fact No. 24, both Hendricks and Ross knew that Hendricks had conveyed to his wife, and she to the present plaintiffs, whatever title Hendricks had had to the Ross place, and at that time they both knew that the present plaintiffs were claiming to own all the place. The deed from Hendricks to Ross was fraudulent.
"46. At the time of the administrator's sale hereinabove referred to, the Union Central Life Insurance Company held a security *Page 107 
deed that had been executed to it by the father of defendant Ross on June 25, 1924, and recorded at page 252 of Deed Book 27 in the office of the Clerk of the Superior Court of Early County, which deed conveyed a portion of the Ross place to secure the payment of 21 notes of even date with such deed, each note bearing interest from its maturity at 8%, the first note being for $210 and due February 1, 1925, and the other twenty notes being for $471.96 each, and due on February 1st of the years 1926 to 1945, both inclusive. At the time of the administrator's sale the first two of said 21 notes had been paid.
"47. Since the administrator's sale there has been paid to the Union Central Life Insurance Company, on principal and interest of the loan referred to in the above finding of fact No. 46, on fire-insurance premiums advanced for insurance on buildings on the security described in the security deed, and for taxes on such security advanced by said Union Central Life Insurance Company the following payments on the following dates [stated, with amounts].
"48. Each of the payments referred to in finding of fact No. 47 was paid with moneys belonging to the plaintiffs in this case.
"49. There has been paid with the plaintiffs' funds the following amounts of taxes on said Ross place (these being taxes paid in addition to the repayments to the Union Central Life Insurance Company for taxes paid by it on that portion of the Ross place embraced in its security deed, and referred to in finding of fact No. 47) [amounts given].
"50. The administrator's sale hereinabove referred to was made subject to the debt due the Union Central Life Insurance Company.
"51. John B. Ross had no notice or knowledge until the year 1934 that the plaintiffs claimed the Ross place or claimed that their money had bought it and paid off liens upon it. Until that time Ross believed that it was T. N. Hendrick's money that had bought said place at the administrator's sale and paid off liens upon it, and believed that in all the proceedings respecting said Ross place T. N. Hendricks was acting only for himself.
"52. John B. Ross has never been a tenant of T. N. Hendricks respecting any portion of the Ross place, nor a tenant of anyone claiming under said Hendricks." *Page 108 
The auditor's conclusions of law were as follows:
"1. Certain items of evidence, most of them paid checks, were offered by plaintiff, and the defendant's objections to them were sustained. Some of these items were considered by the auditor in determining whether or not defendant John B. Ross had paid T. N. Hendricks his `running' accounts for the years 1928 and 1929. The items in question were disallowed in so far as they were sought to be used as proof of the continuance of existence of the debts represented by them, and this was what the auditor intended by `sustaining' them.
"2. Having found that Ross was never Hendricks's tenant, it follows that no recovery can be had upon the dispossessory warrant sued out by Hendricks against Ross, nor upon the bond given in connection with Ross's counter-affidavit.
"3. It has been found that Hendricks actually dismissed the dispossessory warrant. The auditor concludes that he had a right to do so.
"4. Having found that Mrs. Hendricks had spent and dissipated more than one third of the C. J. Rambo estate prior to November 1, 1927, the auditor concludes that from and after that date the plaintiffs were the equitable owners of what remained of the property and funds of said estate, including the bank account at the Bank of Edison denominated Mrs. Ruth Hendricks, Special.
"5. Having found that Ross was put in possession by Hendricks under a contract of purchase, that Ross had no notice or knowledge that in buying the place at administrator's sale, and in contracting to sell it to him, Hendricks was acting for any one other than himself, and that Ross had no notice or knowledge that the purchase-price of the place and the amounts expended in paying taxes and liens were moneys equitably owned by plaintiffs, the contract of purchase is valid and binding as against Hendricks and as against the plaintiffs.
"6. Having held that in March, 1931, Hendricks made a deed to Mrs. Hendricks to the Ross place, and that on November 8, 1932, Mrs. Hendricks conveyed the place to the plaintiffs, the auditor considers that by virtue of those deeds whatever interest Hendricks had in the place passed to the plaintiffs.
"7. Having held that the deed from Hendricks to Ross, dated *Page 109 
December 23, 1937, was fraudulent, it is concluded that such deed should be delivered up and canceled.
"8. Having found that by agreement between Hendricks and Ross a bond for title was given Ike Glenn by Hendricks, as set out in finding of fact No. 31, the auditor concludes that Ross is entitled to credit on the purchase-price of the place for the principal of Glenn's note, viz., the sum of $2642.46 as of December 15, 1928.
"9. Having found that Ross paid Hendricks in 1939 the sum of $1741.44 above his running account with him for that year's advances, etc., the auditor concludes that said amount ought to have been credited, and it is now credited on the purchase-price of the Ross place as of December 1, 1929.
"10. Having found that Ross's tenants paid their 1930 and 1931 rents to Hendricks, the auditor concludes that such rents ought to have been credited, and they are now credited on the purchase-price of the Ross place, as follows: $1394 as of Oct. 1, 1930, and $1210 as of Oct. 1, 1931.
"11. Having found that Hendricks, and after him J. R. Seely as guardian of the present plaintiffs, were in possession of all the Ross place (except the lands described in the dispossessory warrant and in Ike Glenn's bond for title) in the years 1932 to 1939, both inclusive, and collected rents on such lands in each of those years, and that in each of such years the rental value of such lands so possessed and rented out by them was the sum of $825 per annum, the auditor concludes that Ross is entitled to credit on the purchase-price of said Ross place for the several amounts of such rents as of December 1st of each of said eight years.
"12. Having found that certain payments aggregating $7335.02 were made the Union Central Life Insurance Company from moneys of the plaintiffs, as set out in finding of fact No. 47, the auditor concludes that all of such payments ought to be and hereby are charged against Ross as of the dates when they were paid.
"13. It having been found that plaintiffs' money paid certain taxes assessed against the Ross place, as set out in finding of fact No. 49, it is concluded that such payments should be charged against Ross on the price of the place as of Dec. 20th of each year for which the taxes were paid.
"14. [A summary of payments and charges.] *Page 110 
"15. In view of the above findings of fact and of law, the auditor concludes and recommends that it be ascertained what payments (if any) have been made to the Union Central Life Insurance Company since the hearing before the auditor in June of 1940; that with such information the calculation set out in 14 above be continued and concluded, and figure arrived at in that manner which would show the present indebtedness of John B. Ross on the purchase-price of the Ross place; that upon such figure this court either decree the title to all the Ross place described in the first paragraph of the petition (less the lands described in Ike Glenn's bond for title) to be vested in John B. Ross, subject to the plaintiffs' lien for the amount of the John B. Ross indebtedness to be ascertained as above, or that the court decree that said plaintiffs shall convey the same to John Ross upon payment of said sum ascertained to be due by him referred to above; that the security deed transferred by Mrs. Hill to Mrs. Hendricks be delivered up and canceled, together with the note or notes it was executed to secure; that any decree the court makes in the premises has no reference to the balance that remains due to the Union Central Life Insurance Company; that the court decree that the notes given by Ike Glenn are the property of plaintiffs."
The bill of exceptions recites that the plaintiffs filed exceptions both to the findings of fact and of law, but to which findings these related neither the bill of exceptions nor the record discloses. It is further recited that, while argument was had, no ruling was made thereon, but that counsel for plaintiffs made a motion as follows: "And now at the hearing on the exceptions to the auditor's report come the plaintiffs, and move the court that (1) upon the findings of fact made by the auditor not excepted to, showing that the defendant Ross has never paid exceeding $400 of the alleged purchase-price of the property involved in said suit, and (2) showing that said Ross is not a bona fide purchaser of said property for value, and (3) showing that said property in controversy constitutes a trust property into which the funds of plaintiffs have been traced, and therefore the plaintiffs are entitled to said property, subject to lien of $400 and interest in favor of said Ross; (4) whereupon said plaintiffs move the court that a judgment and decree be entered in said case adjudging said property to be the property of the plaintiffs and recovering the same for the plaintiffs, *Page 111 
(5) with a lien attached thereto in favor of said defendant, Ross, to the amount of $400 and interest."
Without disapproving or sustaining any of the exceptions, the court entered a decree which (after preliminary recitals) adjudged "that the motion made by the plaintiffs to enter up judgment in favor of the plaintiffs on the findings of fact already made by the auditor, and to which no exceptions have been filed by defendants, should be and the same is hereby sustained; and that on said findings of fact made by the auditor it is ordered, adjudged, and decreed that said plaintiffs do have and recover of the defendants the lands embraced in the Ross place [described], and the title to said lands is hereby decreed to be in said plaintiffs, and a writ of possession shall issue in favor of the plaintiffs therefor. In making this judgment and decree the court sustains plaintiffs' exceptions to such of the auditor's findings of law as do credit upon the purchase-price agreed by Ross to be paid to Hendricks for said lands the amounts of the rents and profits which accrued from said lands since Nov. 1, 1927, including also the credit of $2642.46 consisting of the Ike Glenn notes, which were delivered to said Hendricks; the court holding that as a matter of law said rents and profits of the property which is now and was all along equitably owned by the plaintiffs — were also the property of plaintiffs, and therefore could not be credited as payments made by the defendants or either of them; this court holding that as a matter of law, under the findings of fact made by the auditor, said Ross can not be considered a bona fide purchaser of said lands from said Hendricks, without notice of the equities and rights of the plaintiffs in said land.
Ross excepted to this decree, to a refusal by the court to recommit the matter to the auditor and to pass on the plaintiffs' exceptions to the report.
1, 2. This case involves the law concerning the tracing of trust funds, and of the respective rights of the beneficial owners against one to whom the trustee ex maleficio sold the property in which the funds were invested, and of one who purchased from the trustee. Certain legal principles will first be *Page 112 
adverted to, and used as touchstones with which to measure these respective rights.
Implied trusts are such as are inferred by law from the nature of the transaction or the conduct of the parties. Code, § 108-104. Trusts are implied whenever the legal title is in one person, but the beneficial interest, either from the payment of the purchase-money or other circumstances, is either wholly or partially in another, or where, from any fraud, one person obtains the title to the property which rightfully belongs to another. § 108-106. Whenever the circumstances are such that the person taking the legal title, either from fraud or otherwise, can not enjoy the beneficial interest without violating some established principle of equity, the court will declare him a trustee for the person beneficially entitled, if such person shall not have waived his right by subsequent ratification or long acquiescence. § 108-107. The beneficiary of a trust estate may affirm or reject an unauthorized investment by the trustee. § 108-424. "A bona fide purchaser for value, and without notice of an equity, will not be interfered with by equity." § 37-111. "Equity will grant relief as between the original parties or their privies in law, in fact, or in estate, except bona fide purchasers for value without notice." § 37-213. "A title obtained by fraud, though voidable in the vendee, will be protected in a bona fide purchaser without notice." § 96-208.
Under the facts as found by the auditor, the money of the complainants was used by Hendricks without authority. He thereby became a trustee ex maleficio in the purchase of these lands, taking title in his own name. The beneficial interest was in them who had the right to affirm the unauthorized investment, and to follow the funds. "All persons aiding and assisting trustees of any character, with a knowledge of their misconduct, in misapplying assets, are directly accountable to the persons injured." Code, § 108-423. "When assets are misapplied and can be traced in the hands of persons affected with notice of the misapplication, the trust shall attach to the assets, and equity will aid in restoring them to their legitimate purpose." § 108-425. "The purchaser from a trustee, with actual or constructive notice of the trust, shall hold as trustee for the beneficiaries; if the purchase is bona fide and without notice, the purchaser shall hold the property freed from the trust." § 108-416. *Page 113 
The auditor found that Ross was without notice of the claim of the beneficiaries until the year 1934, he having gone into possession of said lands in the year 1928 under a contract to purchase same from Hendricks, and that Ross farmed them in 1928, 1929, and 1930. The auditor found also that Ross had not paid the purchase-price in full, nor had he received a deed before he received notice of the equities of the complainants. It is therefore insisted that Ross never became an innocent purchaser within the purview of the Code section last cited.
The case of Carter v. Pinckard, 68 Ga. 817, is inadequately reported. In the first headnote it is stated: "To constitute one a bona fide purchaser for value and without notice, so as to hold a title obtained by his grantor by fraud, he must not only have had no notice, but must also have paid the purchase-money." In Mackey v. Bowles, 98 Ga. 730 (2) (25 S.E. 834), it was ruled: "Although a person who bargained with an administrator for land which the latter had purchased at his own sale, and which he was undertaking to sell in his own right, paid a part of the purchase-money, gave a promissory note for the balance, took a bond for titles, and entered into possession without notice or knowledge of any defect in his vendor's title, such person could not, as against the right of the heir to set the sale of the administrator to himself aside, be treated as a bona fide purchaser for value, if he discovered the truth before completing the payment of the purchase-money, or taking a deed from his vendor." In Donalson v. Thomason, 137 Ga. 848
(74 S.E. 762), it was held that it is a rule in equity that a bona fide purchaser without notice, to be entitled to protection, must be so, not only at the time of the contract or conveyance, but until the purchase-money is actually paid. See Dodd v. Bond,88 Ga. 355 (14 S.E. 581). In Gleaton v. Wright, 149 Ga. 220
(100 S.E. 72), the pronouncement was: "Under the rule in equity, to constitute one a bona fide purchaser in the full sense, three conditions must concur; he must pay the purchase-money, or at least place himself in a position where he is in all events bound to pay the purchase-money; he must get title; and he must pay the purchase-money and get title before notice of the rights of third persons." In Rowe v. Gaskins,148 Ga. 817 (98 S.E. 493), may be found this statement: "It is well settled that the actual payment, before notice, of the purchase-price is essential *Page 114 
to the maintenance of the claim that one is a bona fide purchaser of property for value and without notice." Under these authorities, it must be held that Ross is not a bona fide purchaser, so as to prevent the complainants from asserting their secret equity as against him.
3. A partial payment of the purchase-money before notice of the equitable title of the true owners, although not sufficient to invest the vendee with the character of a bona fide purchaser as regards the entire estate purchased, will entitle him to invoke the aid of the equitable principle that he who asks equity must do equity and to be reimbursed for the amount actually paid before. Donalson v. Thomason, and Gleaton v. Wright, supra. See the discussion in 4 Bogert on Trusts, 2586, § 890.
Before the entering of the final decree, appropriate pleadings were filed by Ross, claiming protection for certain payments alleged to have been made by him before notice. The auditor found that certain payments had been made on the purchase-price. The record must be examined in order to ascertain whether with respect to this matter error was committed in entering the decree on the report of the auditor.
Having elected to affirm the unauthorized investment of their funds in these lands, this necessarily carries with it a right to claim all the gains and advantages arising therefrom. Rogers v.Dickey, 117 Ga. 819, 822 (45 S.E. 71). Compare Fricker v.Americus Manufacturing c. Co., 124 Ga. 165 (10) (52 S.E. 65); Forlaw v. Augusta Naval Stores Co., 124 Ga. 261 (6) (52 S.E. 898); Stover v. Atlantic Ice Coal Corporation,154 Ga. 228 (113 S.E. 802). We think it follows that Ross is not entitled to have the plaintiffs reimburse him for the rents collected by him for the use and occupation of the land, and by him turned over to Hendricks, even though done before receiving notice of the equity of the plaintiffs. These rents belonged to the complainants, and, when delivered by Ross to Hendricks, should not be taken into account in determining the equities of the parties. It was erroneous for the auditor to allow Ross credit for them.
Nor is Ross entitled to the credit allowed him by the auditor (finding of law 8), to wit, the principal of the Ike Glenn note, $2642.46, which is referred to in finding of fact 31 as given for a part of the Ross place. That on December 15, 1928, Hendricks *Page 115 
and Ross made an agreement by which Glenn was given a bond for title to 150 acres of the land, in exchange for his note in the sum named, can not credit any equity in Ross, so as to permit him to be reimbursed for that amount in a suit filed by the plaintiffs in the instant case. What Ike Glenn's rights are or may be can not be here decided, he not being a party to the suit; but there is nothing in the transaction to justify it as representing purchase-money paid by Ross and for which he is entitled to reimbursement. When the rents and the Ike Glenn notes are eliminated, the other item left is $522.80 balance after paying account, shown in finding of fact 35 by the auditor. We have here a finding of fact that as of December 1, 1929, Ross paid Hendricks $1741.44 above his running account for that year's advances; but in that finding it definitely appears that, included in the sum total of payments from which the debits were deducted, the auditor allowed Ross credits of $3472.80, to which he was not entitled. The $522.80 is arrived at in this way: The findings of the auditor were that the plaintiff in error was in possession of the entire Ross place on December 18, 1928; and there is a further finding that he operated it in the years 1928, 1929, 1930, and 1931; that he operated it in 1928, 1929, and 1930 partly by tenants, who paid their rents to Hendricks, to be credited to Ross; that in 1928 and 1929 Ross received for himself and his tenants various advances from Hendricks; that his "advance account" with Hendricks for the year 1928 was paid in full; that for 1930 and 1931 the only payments found by the auditor to have been made by Hendricks to Ross were rents from four named tenants on the place. Therefore if any payment was made which did not represent rents collected from the tenants on the place, it was for the year 1929. As to that, the finding of the auditor was that the total amount of credits to which Ross was that year entitled amounted to $4595.60. Of this amount, however, $3472.80 was rent collected from named tenants on the place. The difference between the two amounts is $522.80, which is the balance of the sum which the auditor finds Ross paid Hendricks, when the rents shown in the auditor's finding are deducted. The last date on the account for the year 1929, as shown by finding of fact 35, is December 1, 1929.
Under the applicable principle hereinbefore referred to, Ross is entitled to be reimbursed therefor. *Page 116 
While dealing with rents, it is well to note that neither in the plaintiffs' motion to enter a decree in their favor on the findings of fact as reported by the auditor, nor in the decree itself, were rents mentioned; and no exception is taken on the ground that the decree is silent as to these. In determining the rights of the respective parties, placed as the plaintiffs and the defendant Ross were, we have not gone into the abstract question as to whether, when in a case like this the beneficial owner recovers the property, he is also entitled to have an accounting for the rents, issues, and profits. As to this, see generally, Fricker v. Americus Mfg. c. Co., supra; 65 C. J. §§ 214, 216, 893, 897, 910, 999; Wormley v. Wormley, 8 Wheat. (U.S.) 421 (5 L. ed. 651); Code, § 108-424.
4. One of the findings of law by the auditor was that title be decreed in Ross, less the land described in Glenn's bond for title, to be vested in John B. Ross subject to the indebtedness which represents the balance of the purchase-price which he had agreed to pay Hendricks therefor. In view of this, could the court, on motion of complainants, enter in their favor a decree that they recover the lands involved? As elsewhere shown, the auditor found certain facts the legal effect of which was that the plaintiffs were the owners of the property, and made other findings of fact the legal effect of which was that Ross was not a bona fide purchaser for value. With these basic findings of fact, the auditor erred in his findings of law as to the decree to be entered. When an auditor upon facts found by him reaches a wrong legal conclusion as to what kind of a decree should be entered, the judge can and should correct such erroneous conclusion of law, and render the correct decree under the findings of fact by the auditor. Wiley v. Sparta, 154 Ga. 1
(114 S.E. 45, 25 A.L.R. 1432). That certain findings of fact, to which the plaintiffs filed exceptions which had not been disposed of, is no reason why the judge should not on motion enter the decree he did, based as it was on those findings of fact which were controlling. Robinson v. Reese, 175 Ga. 574,581 (165 S.E. 744). But on such motion to enter a decree on the findings of fact as made by the auditor, the plaintiffs waived such exceptions theretofore filed by them. Nor was it erroneous to refuse to recommit the case to the auditor, since his detailed and specific findings of fact covered the issues, and were sufficient, without more, to form the basis of a proper decree. *Page 117 
5, 6. Since, under the law as applied to the facts found by the auditor, the defendant Ross was entitled to be reimbursed by the plaintiffs in the sum of $522.80 together with interest, the same being a payment made by him in good faith to the holder of the legal title, before notice that the equitable ownership was in the plaintiffs, a reversal will not result, since, under the circumstances here presented, this court can in its judgment give such direction as is consistent with the law and justice of the case. Code, §§ 6-1610, 24-3901 (2); United States Fidelity Guaranty Co. v. Clarke, 187 Ga. 774 (2 S.E.2d 608); Bankof Tupelo v. Collier, 191 Ga. 852 (14 S.E.2d 59). Therefore direction is given that the judgment be so modified as to include a provision that the plaintiffs shall reimburse Ross in the sum of $522.80, with interest from December 1, 1929, at the rate of seven per cent. per annum, and that Ross be given a lien for that amount on the land involved. Since the effect of the judgment of affirmance with direction is to materially modify the same to the substantial benefit of the plaintiff in error, let the costs which accrued as the result of suing out this writ of error be taxed against defendants in error.
Judgment affirmed, with direction. All the Justices concur.