## 32591. LIFE & CASUALTY INSURANCE CO. OF TENN. *v.* WOOD.

DECIDED SEPTEMBER 10, 1949.

*Covington, Covington & Sullivan*, for plaintiff in error.
*Malcom C. Tarver*, contra.

SUTTON, C. J.   This is an action on a life-insurance policy brought by Mrs. Mae Wood against the Life and Casualty Insurance Company of Tennessee in Whitfield Superior Court. The substantial allegations of the petition are as follows:   The com-

pany issued a policy of life insurance (which is attached to and made a part of the petition) on July 24, 1933, on the life of the plaintiff's son, Claude E. Wood Jr., then age 11, the plaintiff being the beneficiary. Her son enlisted in the United States Navy on August 27, 1942, and died in the naval service, on July 2, 1944, while the insurance policy was in effect. Acceptable proof of death was submitted to the defendant company, but the defendant declined to pay the face value of the policy, $202. The refusal to pay was based on a provision in the insurance policy as follows: "Military and Naval Service—The insured may serve in the Navy or Army of the United States or in the National Guard in time of peace or for the purpose of maintaining order in case of riot; in time of actual war, however, a written permit must be obtained from the company for such service and an extra premium paid. Should the insured die while enrolled in such service in war time without such permit, the company's liability will be restricted to the net reserve on this policy." Upon her son's enlistment in the Navy, the plaintiff notified G. W. Arnold, in-charge of the Dalton, Georgia, office of the company, and other named agents, of such fact. She was not advised by Arnold or the other named agents as to any extra premium being due on account of her son's naval service. Upon receipt of notice by the company and its agents it was the duty of the defendant and its agents to demand from her the extra premiums required to keep the policy in full force. The company, by notice and continued acceptance of premiums, is estopped from insisting upon the provisions of the policy in respect to military and naval service, and has by its conduct waived any right to apply these provisions of the insurance policy, or to take advantage of its failure to demand extra premiums. Arnold was an official of the company with authority to waive the provisions of the insurance policy as to military and naval service, and the notice received by Arnold and other agents of the company was transmitted to the home office of the company, and Arnold and the other agents were not directed to demand an extra premium on account of military or naval service, nor to advise the plaintiff of the necessity of the issuance of a written permit, which was issued as a matter of form. The plaintiff paid $9 in premiums after her son died, and this amount

should be applied to whatever extra premiums were due on account of his naval service. Judgment was sought for the face amount of the policy, plus 25% damages and attorney's fees.

The defendant demurred generally and specially to the petition, and answered the petition, admitting that it was indebted to the plaintiff for $9, the amount of premiums paid after the death of the insured without knowledge of his death, and for the additional amount of $40.40, it being the custom of the company to pay 1/5 of the face amount of the insurance policy where the net reserve on the policy is less than this amount and where the company is liable for the net reserve. The demurrer was overruled, to which ruling the defendant excepted pendente lite.

It was agreed that the trial judge should hear the evidence and pass on all issues of law and fact without the intervention of a jury. At this hearing the plaintiff introduced the original application for the insurance and the insurance policy in evidence, and read in evidence a provision appearing on the back of the policy to the effect that if the insurance policy lapses for nonpayment of premiums after being in effect for a period of three years, the company will automatically continue the policy for a reduced amount of paid-up insurance. Under this provision, where the age at the next birthday after the date of the policy is 12, the value at the end of the ninth year is $76. The plaintiff testified in respect to signing the application for the insurance, paying the premiums, and that she told Arnold and other agents at the Dalton office that her son was in the Navy within a week after he enlisted, but that none of them mentioned anything about an extra premium, and that she talked to Arnold again when her son was sent overseas, in November, 1943. Portions of a deposition by G. R. Williams, vice-president of the insurance company, were read in evidence by the plaintiff and the defendant. From his testimony it appears that all applications for insurance were finally approved, and the policies issued at the home office of the company, and that all applications were carefully checked at the home office to see whether or not the applicant met the underwriting standards of the company. This officer testified that he did not know of any instance where the company refused to accept a tender of extra

premiums as provided for under the military or naval-service clause of the insurance policy. He identified certain notices to agents in regard to calling to the attention of ordinary and industrial travel and pedestrian policies the provisions of their policies in respect to military or naval service. He testified that the district managers and the local agents of the company had no authority to issue a policy, or to waive any requirement of the company for the issuance of a policy or any provisions of a policy, but that they could only make recommendations in this respect to the home office. Frank R. Leu, an actuary for the defendant company, testified by deposition that the reserve on the policy in question was $38.21. G. W. Arnold testified that he was the manager of the Dalton office of the company and that he never notified the district office in Rome nor the home office in Nashville about the naval service of the insured, and that he never made any effort to collect the extra premiums from anyone on account of the military or naval-service clause. Judgment was rendered for the plaintiff for $176.40, the defendant's motion for a new trial was overruled, and the defendant excepted.

■ We have carefully examined the allegations of the petition, which are set out in substance in the foregoing statement, and are of the opinion that the allegations are sufficient to show a waiver of the provisions of the insurance policy in respect to military or naval service, and that a cause of action is set out in the plaintiff's petition and the same is not subject to the demurrer interposed thereto. It was not necessary to allege any special facts showing bad faith on the part of the company in its refusal to pay. Although certain language in the petition may be superfluous, and certain conclusions not entirely supported by alleged specific facts, the grounds of demurrer urged by the defendant are without substantial merit, and it was not error for the trial judge to overrule the demurrer.

■ The motion for a new trial consists only of the general grounds, and the sole question presented is whether or not the judgment was authorized by the evidence. Under the evidence, the trial judge was not authorized to find that there was a waiver of any of the provisions of the insurance policy in question. Mere knowledge on the part of agents of the company of

the fact that the insured was in the naval service of the United States, coupled with the fact that these agents of the company continued to collect the premiums on the policy, without demanding or collecting the additional premiums due on account of the insured being in the naval service, or informing the insured or the beneficiary of the provisions of the policy in that respect, does not impute to the defendant company any waiver of the provisions of the policy with respect to the insured being in the naval service. The defendant in error cites and contends that the case of *Harmon* v. *State Mutual Insurance Co.*, 202 *Ga.* 265 (42 S. E. 2d, 761), is controlling in the present case. In that case the question involved was whether or not "an act of the insured which forfeits the terms of an insurance policy, is waived by the company collecting and retaining the premium, when an officer or agent of the company, having authority to issue policies or to enter the waiver, has actual knowledge of the act of the insured which created the forfeiture"; and it was there held that "where the double-indemnity feature of the policy became inoperative upon the insured entering the military service, but where 'some officer or agent having authority to issue policies or to enter the "waiver" had actual knowledge' of the insured entering the military service at the time the company received and retained the premium, this would amount to an implied waiver of the provision as to military service." The uncontradicted evidence in the present case shows that no officer or agent of the defendant company who had authority to issue policies or to waive any provision of the policy had actual knowledge of the entry of the deceased insured into the naval service; and there is no contention that there was any express waiver of the provisions of the policy in respect to military or naval service. The case at bar is clearly distinguishable from the *Harmon* case, supra, and the principle ruled by the Supreme Court in that case is not applicable and controlling in the present case under the facts as disclosed by the evidence. By the express provisions of the insurance policy the company was liable for the net reserve of the policy if the insured died while in the naval service in time of actual war without having obtained a permit and paying an extra premium. It does not appear from the evidence that the company ever actually tendered this amount to the bene-

ficiary or the amount of the premiums paid after the death of the insured, although liability is admitted for an amount in excess of the net reserve and payable in lieu of the net reserve in accordance with the custom or practice of the company, and liability is admitted for the premiums paid after the death of the insured. There is no evidence that the insurance policy ever lapsed, or that the beneficiary was entitled to the amount of paid-up insurance as stipulated by the contract in the event the policy lapsed for non-payment of premiums. Based on the evidence and the admitted liability of the defendant, the only judgment authorized for the plaintiff was for the amount payable in lieu of the net reserve, $40.40 and the amount of the premiums paid after the death of the insured, $9, with interest and costs. The principles ruled in *Life & Casualty Insurance Co.* v. *McLeod*, 70 *Ga. App.* 181 (27 S. E. 2d, 871), are applicable and controlling in the present case. Also, see *Lindsey* v. *Life & Casualty Insurance Co.*, 70 *Ga. App.* 190 (27 S. E. 2d, 877), and the annotation in 168 A. L. R. 685, 697. Accordingly, the judgment of the trial court is affirmed with direction that it be written down as above indicated; and upon failure to do so, the judgment shall stand reversed.

*Judgment affirmed with direction. Felton and Worrill, JJ., concur.*

ON MOTION TO TAX COSTS.

SUTTON, C. J. The judgment in this case was affirmed with direction, and on condition that the judgment be written down from $176.40 to $49.40. Motion has been made by the plaintiff in error that the costs for bringing the case to this court be taxed against the defendant in error since the effect of the judgment of affirmance with direction is a material modification of the judgment of the trial court to the substantial benefit of the plaintiff in error. The motion is meritorious; and, following the decisions of this court and the Supreme Court with respect to this point, it is ordered that the costs which accrued as the result of suing out the writ of error in this case be and the same are taxed against the defendant in error. See *National-Ben Franklin Fire Ins. Co.* v. *Darby*, 48 *Ga. App.* 394 (172 S. E. 74, 819); *Scott* v. *Lunsford*, 141 *Ga.* 73 (80 S. E. 316); *Long* v. *Gresham*, 148 *Ga.* 170, at 175 (96 S. E. 211); *Ross* v. *Rambo*, 195 *Ga.* 100 (6) (23 S. E. 2d, 687). *Felton and Worrill, JJ., concur.*